IONNO ET AL., APPELLEES, *v.* GLEN-GERY CORPORATION ET AL.,
APPELLANTS.

[Cite as Ionno *v.* Glen-Gery Corp. (1983), 2 Ohio St. 3d 131.]

(No. 82-129—Decided January 5, 1983.)

*Krugliak, Wilkins, Griffiths & Dougherty Co., L.P.A.,* and *Mr. Ronald W. Dougherty,* for appellants Richard James, Jr., and Kermit James.

*Messrs. Day, Ketterer, Raley, Wright & Rybolt* and *Mr. Donald W. Raley,* for appellant Glen-Gery Corp.

*Messrs. Black, McCuskey, Souers & Arbaugh* and *Mr. Gene Barnhart,* for appellant Crescent Brick Co.

*Mr. Dale T. Evans,* for appellees.

*Messrs. Thompson, Hine & Flory* and *Mr. Paul W. Brown,* urging reversal for *amicus curiae* Ohio Mining & Reclamation Association.

*Mr. Robert Shenk,* urging affirmance for *amicus curiae* Ohio Farm Bureau Federation, Inc.

CLIFFORD F. BROWN, J. In the present case, we are confronted with a situation in which a lessor under a mining lease seeks to enforce a forfeiture of that lease for breach of an implied duty to reasonably develop the leased premises. The lease in question contains no time period in which mining operations are required to commence, but does provide for both a percentage of the value of the minerals secured and the annual payment to lessor of advance minimum royalties. Our first consideration must therefore be whether, under these circumstances, lessee is under the obligation to reasonably develop the land; second, whether the payment of an annual royalty operates so as to relieve lessee of this obligation; and third, whether breach of an implied covenant, without more, is sufficient to justify the asserted forfeiture.

I

This court has long adhered to the general principle that absent express provisions to the contrary, a mineral lease includes an implied covenant to reasonably develop the land. *Beer* v. *Griffith* (1980), 61 Ohio St. 2d 119 [15 O.O.3d 157], paragraph two of the syllabus; *Venedocia Oil & Gas Co.* v.

---

[1] The 1979 payment, however, was refused by appellees and returned to Glen-Gery Corp. with a letter stating that "the lease is to be considered forfeited."

*Robinson* (1905), 71 Ohio St. 302, 314; *Harris* v. *Ohio Oil Co.* (1897), 57 Ohio St. 118, 127. Thus, where a lease fails to contain any specific reference to the timeliness of development, the law will infer a duty to operate with reasonable diligence. See, generally, 60 A.L.R. 901; 76 A.L.R. 2d 721; 87 A.L.R. 2d 1076 and cases cited therein. Inasmuch as the lease in question contains no express disclaimer of the covenant to develop within a reasonable time, the instant case clearly falls within this general rule.

## II

It is contended by appellants, however, that the payment of an annual minimum rent or royalty relieves them of their obligation to diligently mine the premises. In essence, they argue that they have an option to either work or not to work the land for an indefinite term as long as the payments are timely made. In determining the validity of this proposition, it is necessary to evaluate the precise language contained in the contract upon which appellants base their argument.

The lease at issue provides for an annual payment, which "shall be credited against the amount or amounts that shall thereafter become due for or on account of the removal, mining or hauling of coal and/or clay as provided in this Lease." Clearly, we are not dealing with a contract which exacts a non-refundable annual payment of rent to the lessor as separate and independent consideration. Rather, because the minimum royalties required under the lease at hand offset production royalties, the real consideration for the lease is the expected return derived from the actual mining of the land.[2]

---

[2] Certainly the only material inducement which influences a lessor to grant a lessee the power to exercise extensive rights upon his land is his expectation of receiving such royalties based upon the amount of minerals derived from the land. In the present case, the lease details the percentage of the value of the minerals secured to be paid lessors as follows:

"(1) Ten cents (10¢) per net ton of two thousand (2000) pounds for all clay so mined and removed from the demised premises;

"(2) Twenty-five cents (25¢) per net ton of two thousand (2000) pounds for all coal from the No. 5 vein so mined and removed from the demised premises;

"(3) Thirty-five cents (35¢) per net ton of two thousand (2000) pounds for all coal from the No. 6 vein so mined and removed from the demised premises;

"(4) One and one half cents (1½¢) per net ton of two thousand (2000) pounds for all coal or clay mined on other premises and hauled or transported on, under, through or over the demised premises."

In return, the lessee is granted broad privileges which include:

"* * * the right to prospect and test drill the demised premises for the purpose of ascertaining the presence of merchantable, mineable and usable coal and/or clay; the right to enter upon said premises at any and all times; a right-of-way on and over the surface and/or subsurface of the demised premises and any land on which a right-of-way or easement for access to or egress from said premises is located, for all necessary roads, power lines, haulage ways, air or ventilating drafts, escape ways and drainage holes, and the right to construct and use the same; the right to use so much of the surface or sub-surface of said premises as may be necessary for storing coal and/or clay and depositing refuse and overburden; and the right to erect on said premises such buildings, structures and fixtures as may be necessary or incident to the proper

Given the nature of these annual payments, there is manifestly an implied covenant on the part of the lessees that they will work the land with ordinary diligence, not simply for their own advantage and profit, but also so that lessors may secure the actual consideration for the lease, *i.e.*, the production of minerals and the payment of a royalty on the minerals mined. It would therefore contravene the nature and spirit of the lease to allow the lessees to continue to hold the land for a considerable length of time without making any effort to mine.

The fact that the lessees have continued to make annual payments for a period of over eighteen years does not alter their responsibility to develop the land within a reasonable time. The questions of working diligently and of paying rent or royalties are entirely separate matters. An annual advance payment which is credited against future royalties cannot be viewed as a substitute for timely development. To hold otherwise would be to reward mere speculation without development, effort, or expenditure on the part of the lessees. It would allow a lessee to encumber a lessor's property in perpetuity merely by paying an annual sum. Such long-term leases under which there is no development impede the mining of mineral lands and are thus against public policy.

We therefore hold that an annual advance payment which is credited against future royalties under the terms of a mineral lease does not relieve the lessee of his obligation to reasonably develop the land. We further find that since the lessees in the present case have failed to carry on any sort of mining activity on the leased premises since the inception of the lease in 1960, that they have breached such duty. The question remains, however, whether breach of an implied covenant to reasonably develop is a proper ground for forfeiture.

### III

In *Beer* v. *Griffith, supra,* this court held at paragraph three of the syllabus:

"Where certain causes of forfeiture are specified in an oil and gas lease, others cannot be implied. Under such a lease, the remedy for a breach of an

---

prosecution of the business of mining, stripping, removing, producing, transporting, preparing and selling of coal and/or clay.

"* * *

"It is further agreed that Lessee shall have the right to transport coal and/or clay mined upon land *other than* the land herein leased, materials, equipment and supplies, over, through or under demised premises, and Lessee shall have the right to use the surface and sub-surface of the demised premises, and all roads, drains, airways, power lines and structures on said premises, and the fixtures and equipment relating thereto for such purpose and for depositing on or removing from the demised premises ground and earth, unusable coal, unusable clay, overburden, and other waste materials incident to mining operations, as mining conditions may require, provided Lessee has the same or reciprocal rights on adjoining lands and any excess spoil or other waste material from stripping on adjoining lands and deposited on demised premises shall be graded to the approximate contour of the demised premises." (Emphasis added.)

implied covenant, without more, is damages, and not forfeiture of the lease, in whole or in part. (*Harris* v. *Ohio Oil Co.*, 57 Ohio St. 118, paragraphs two and three of the syllabus, approved and followed.)"

Nevertheless the court went on to carve out the following exception to the above-stated rule: "Where legal remedies are inadequate, forfeiture or cancellation of an oil and gas lease, in whole or in part, is an appropriate remedy for a lessee's violation of an implied covenant." *Id.* at paragraph four of the syllabus.

Thus, the *Beer* decision does not stand for the proposition that forfeiture can never be imposed where there is a breach of an implied covenant. Such relief will be granted when necessary to do justice to the parties, even though specific grounds for forfeiture are set forth in the lease. See *Beer, supra.* However, inasmuch as forfeiture is an equitable remedy, a strong showing of a violation of a clear right is required before a court will resort to such an extreme measure.

It is clear from the complaint that the sole relief sought in the present case was forfeiture. No claim was made that there was an inadequacy of damages. Indeed, no proof was offered regarding damages at all. Since no evidence on damages was presented in the lower courts, any finding at this level that a legal remedy is inadequate would be based solely on conjecture and speculation.[3]

Thus, while the payment by a lessee of annual minimum royalties under a mineral lease will not necessarily preclude a claim of forfeiture asserted by a lessor and based upon an implied covenant to reasonably develop the land, the lessor has the burden of proving damages are inadequate before such forfeiture may be declared. In the absence of any proof of such damages, it would be inequitable to declare a forfeiture in favor of a new purchaser of property who took the land subject to the terms of the lease and accepted the obligations of such lease.[4] See *United Feldspar & Minerals Corp.* v. *Bumpus* (1946), 142 Me. 230, 49 A.2d 473.

For this reason the judgment of the court of appeals is hereby reversed.

*Judgment reversed.*

W. BROWN, PARRINO, HOLMES and KRUPANSKY, JJ., concur.

CELEBREZZE, C.J., concurs in judgment only.

---

[3] Appellees claim that damages are not ascertainable. However, there is absolutely no evidence on the record to substantiate how, after owning the property for only ten months and rejecting the first annual payment due under the lease, they were damaged as a result of no mining being conducted over the prior seventeen-year period.

[4] The deed conveying the property to the appellees specifically stated that such transfer was "[s]ubject to a coal and clay lease dated September 14, 1960, and recorded in Vol. 123, page 442 of the Stark County Lease Records."

LOCHER, J., dissents.

PARRINO, J., of the Eighth Appellate District, sitting for SWEENEY, J.

LOCHER, J., dissenting. The majority correctly concludes that the lessees breached their implied covenant to develop this property. Yet, the majority refuses to apply the principle articulated in the holding of *Beer* v. *Griffith* (1980), 61 Ohio St. 2d 119 [15 O.O.3d 157], to this case. Therefore, I dissent.

"Where certain causes of forfeiture are specified in an oil and gas lease, others cannot be implied. * * *" *Beer, supra,* paragraph three of the syllabus. This lease provides for forfeiture under two circumstances: (1) failure to make timely payment, and (2) failure "to keep and perform any of the covenants on its part to be kept and performed * * *." This latter requirement includes not only express covenants but *any* covenant. By recognizing that lessees breached the covenant to develop, the majority has acknowledged that one of the "causes of forfeiture" specified in the lease has occurred.

Under *Beer,* therefore, we should never reach the issue of whether the lessors have pleaded that damages are an inadequate remedy. The lease specifies the remedy—forfeiture. The holding of the majority reaches beyond the lease to curtail the lessors' prerogative as to how the property will be used and to limit their right to alienate this real estate.

Accordingly, I would affirm the judgment of the court of appeals.