This appeal concerns a suit for partial cancellation of an oil, gas, and mineral lease. The lessors, Augustine Meaher, Jr., et al. (Meahers) appeal from a partial summary judgment entered against them in favor of the lessee, Getty Oil Company (Getty). We affirm.
 Facts
On 1 July 1970, the Meahers executed an oil, gas, and mineral lease in favor of the Getty Oil Company covering five tracts of land, totaling approximately 1,840 acres, in Mobile County, Alabama (hereafter Meaher lease). All five of the leased tracts are located in the Chunchula Field.
The lease provided for a primary term of five years from the date of execution "and as long thereafter as oil, gas or other mineral is produced from said land, or lands with which said land is pooled hereunder."
Initially, each of the tracts or interests in the land covered by the lease were included within five separate competitive drilling and producing units established by order of the Oil and Gas Board in 1974. Each unit was drilled and developed so that a producing unit well was located within each unit.
Beginning in 1978, royalties paid to the Meahers attributable to the lease in question were substantial. However, the production level, and therefore royalties paid, on one particular tract of land covered by the lease, Section 10, began to decline. Between 1978 and 1980, the royalties paid to the Meahers, with respect to Section 10, fell from $16,015.91 to $4,337.81.
During this same period of time, plans were underway to unitize the entire Chunchula Field into a single fieldwide unit. Under such a plan, production of the entire field was to be increased by converting from primary to secondary recovery methods. From September 1978 through May 1980, Getty personnel, as well as other working interest owners, conducted extensive engineering and geological studies of the Chunchula Field in an effort to define the field's productive limits, develop the scientific basis and method for conducting secondary recovery operations, and develop a formula for participation in the unitized production of the field.
On 6 October 1980, Augustine Meaher, Jr., sent a letter to Getty informing them of his dissatisfaction with Section 10's performance. Meaher complained that Section 10's poor performance adversely affected its "deliverability," which was a key factor in determining royalties under the impending unitization plan. Citing the tract's failure to produce in paying quantities, as well as drainage to other wells, Meaher charged Getty with failure to act as a prudent operator. Meaher concluded by requesting that Getty either rework the well on Section 10 or commence redrilling operations on the section.
Getty had undertaken an acidization of the well on Section 10 in an effort to increase production in August of 1980; however, subsequent to receiving Mr. Meaher's letter, Getty took no further action on the well.
On 29 January 1981 the Meahers filed suit against Getty, seeking both damages and cancellation of the lease with respect to Section 10. The Meahers alleged that Getty had breached the lease by failing to develop the Section 10 land tract and known mineral producing formations on or beneath Section 10. Additionally, the Meahers averred that Getty had breached its obligation to act as a prudent operator by: failing to explore and test Section 10; failing to protect the tract against drainage; failing to produce and market discovered minerals; and failing to protect the Meahers' interest in the unitization plan of the Chunchula Field so as to insure that the plaintiffs receive their just share of production royalties from Section 10. *Page 445 
On 26 August 1982, the Meahers filed an amended complaint. In addition to realleging the breach of the lease for failure to fulfill obligations created by express and implied covenants, the Meahers averred both that the lease had expired by its own terms and that the Section 10 land tract had been abandoned.
On 24 March 1983, the trial court granted partial summary judgment in favor of Getty "insofar as Plaintiffs seek to cancel or terminate the oil and gas lease." The court further noted the lack of reason for delay and therefore entered final judgment in favor of Getty. Rule 54 (b), ARCP. On 22 April 1983, the Meahers filed notice of appeal with respect to the trial court's partial summary judgment.
 I
The standard of review of a summary judgment is whether there is any evidence which, when viewed in a light most favorable to the nonmoving party, presents a genuine issue of material fact. ARCP 56; Ryan v. Charles Townsend Ford, Inc., 409 So.2d 784
(Ala. 1981). Only where the nonmoving party may not prevail under any set of proffered facts, under any cognizable theory of law asserted, is summary judgment appropriate, Harbour v.Colonial Fast Freight Lines, Inc., 336 So.2d 1100 (Ala. 1976);Horton v. Northeast Alabama Regional Medical Center, Inc.,334 So.2d 885 (Ala. 1976).
In light of the above, this court must consider whether partial cancellation of the Meaher lease, according to any cognizable theory of law asserted, under any set of facts presented, is appropriate. The Meahers rely upon three theories of law in support of their claim for cancellation: that the lease expired by its own terms; that Getty breached the lease by failing to adhere to its express and implied covenants; and that Getty abandoned the lease. We consider each theory separately.
 II
The Meahers argue that the lease expired by its own terms with respect to the section 10 land tract when that tract ceased paying in commercial quantities. While they concede that at all relevant times production in paying quantities occurred on portions of the leased lands, the Meahers nevertheless contend that since it is disputed whether Section 10 was producing in paying quantities, summary judgment as to their claims for cancellation was improvidently entered.
This argument is based upon the cessation of production clause contained within the lease, which reads in pertinent part:
 "[I]f after discovery of oil, gas or other mineral, the production thereof should cease from any cause, this lease shall not terminate if lessee commences additional drilling or reworking operations within sixty days thereafter. . . ."
The Meahers conclude that since ample evidence was proffered indicating Section 10 had ceased production for more than 60 days, the lease, with respect to Section 10, terminated by its own provisions. We disagree.
The Meahers' argument presupposes that cessation of production on Section 10 triggers the cessation of production clause respecting that tract of land. To the contrary, in the absence of a "Pugh"[1] clause, production of oil, gas or minerals in paying quantities from any tract of land covered by a lease will hold the entire lease beyond the primary term by production. Jones v. Bronco Oil Gas Co., 446 So.2d 611 (Ala. 1984); Mize v. Exxon Corp., *Page 446 640 F.2d 637 (5th Cir. 1981) (interpreting Alabama law); see alsoBernard v. Marathon Oil Co., 381 So.2d 1286 (La.App.), writref'd, 384 So.2d 793 (La. 1980).
In Bronco, this court held, where a portion of the leased lands in question were located within a compulsory unit, that in the absence of a "Pugh" clause, production from anywhere on the lands within the unit preserves the validity of the lease beyond the primary term to both the leased lands within, and those outside, the unit. The rationale for this holding is twofold. First, lessors have the option of including within the lease a "Pugh" clause, see Bronco, which serves to make the lease divisible, imposing obligations upon the lessee on a unit-by-unit or tract-by-tract basis. See 4 E. Kuntz, The Lawof Oil and Gas § 48.4 (1972); 4 H. Williams and C. Meyers, Oiland Gas Law, § 669.14 (1981).
Second, implied covenants to reasonably develop the leased lands, recognized to exist in every oil and gas lease, continue to obligate the lessee to develop all the leased lands, both within and without the producing unit. Jones v. Bronco Oil Gas Co., supra. Mize v. Exxon Corp., 640 F.2d 637, 641 (5th Cir. 1981); see also Sohio Petroleum Co. v. Miller,237 La. 1015, 112 So.2d 695, 699 (1959).
We note that the Meaher lease is devoid of any "Pugh" clause. In fact, by the express terms of the habendum clause, the lease is to be extended beyond the primary term as long "as oil, gas, or other mineral is produced from said land or lands with which said land is pooled hereunder." We find no suggestion in this provision, or in any other provision included within the lease, that the obligation to produce is divisible. We hold that production in paying quantities on the remaining tracts of land included within the Meaher lease preserves the lease beyond its primary term through "production" as contemplated by the habendum clause. Jones v. Bronco Oil Gas Co., supra; Mize v.Exxon Corp., 640 F.2d at 641.
 III
Finding that the Meaher lease was held by production does not conclude our inquiry. The Meahers allege that Getty breached the lease, respecting Section 10, by failing to adhere to several express and implied covenants recognized to exist in oil, gas, and mineral leases. The question before this court is whether cancellation is an available remedy for failure to comply with such implied covenants.[2]
At the outset, we note that the Meahers have not produced any evidence to support a claim for breach of the covenant of further exploration. In contrast to the implied obligation to reasonably develop the leased land, the covenant of further exploration concerns the obligation to drill in potentially productive, but yet unproved, geological formations or strata. H. Williams and C. Meyers, Oil and Gas Law § 841 (abr. ed. 1981); see also Meyers, Implied Covenant of FurtherExploration, 34 Tex.L.R. 553 (1956). This obligation arises chiefly from the policy against allowing the lessee to hold a valuable mineral lease for speculative purposes. 5 E. Kuntz,The Law of Oil and Gas, § 62.1 (1972).
The evidence presented in opposition to Getty's motion for summary judgment concerned the proved formations of Section 10. For example, the Meahers complain of drainage and complain that Getty failed to rework or redrill on Section 10. Accordingly, *Page 447 
it is not necessary for this court to consider the adoption of the implied covenant of further exploration, as the Meahers have failed to present any evidence to support such a claim.
The Meahers have alleged, and presented evidence supporting, the breach of implied covenants to reasonably develop the leased lands, to protect the lands from drainage, to produce and market discovered minerals, and to protect the Meahers' interest in the unitization plan of the Chunchula field.
The appropriate remedy for breach of these implied covenants is a question of first impression for this court. Three views exist throughout the oil and gas producing jurisdictions. See generally R. Hemingway, Law of Oil Gas §§ 8.10-8.11 (1983). A minority of jurisdictions hold that the exclusive remedy for breach of implied covenants is damages. See e.g., Geary v.Adams Oil Gas Co., 31 F. Supp. 830 (E.D.Ill. 1940); Beer v.Griffith, 61 Ohio St.2d 119, 399 N.E.2d 1227 (1980); McCutcheonv. Enon Oil Gas Co., 102 W. Va. 345, 135 S.E. 238 (1926). In the majority of jurisdictions, cancellation may be sought as a remedy for breach of implied covenants only upon a showing that damages are wholly inadequate. See e.g., Southwest GasProducing Co. v. Seale, 191 So.2d 115 (Miss. 1966); W.T.Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S.W.2d 27
(1929); Alford v. Dennis, 102 Kan. 403, 170 P. 1005 (1918). Finally, a few jurisdictions allow cancellation as a remedy without first proving the inadequacy of damages. See e.g., Sappv. Massey, 358 S.W.2d 490 (Ky. 1962).
After reviewing the recognized authorities on the subject, we are of the opinion that the majority view is the most persuasive. Accordingly, we hold that an action for damages is the proper remedy for breach of the implied covenants to develop, produce, market, and prevent drainage. Only in the extraordinary circumstance where damages are wholly inadequate as a remedy will our courts, exercising equity jurisdiction, subject the lease to cancellation.
This view is consistent with two principles of law pervasive in our jurisprudence. First, implied obligations are to be treated as covenants rather than conditions subsequent and as such cannot support forfeitures or cancellation unless remedies at law are wholly inadequate. Lowery v. May, 213 Ala. 66,104 So. 5 (1925). See also Schaefers v. Apel, 295 Ala. 277,328 So.2d 274 (1976); Phillips v. Sipsey Coal Mining Co., 218 Ala. 296,118 So. 513, 521 (1928). Second, the law disfavors forfeitures and the cancellation of an oil, gas, and mineral lease is nothing less than a forfeiture of a recognized and protected property interest. Superior Oil Co. v. Devon Corp.,604 F.2d 1063 (8th Cir. 1979); Sinclair Oil and Gas Co. v.Bishop, 441 P.2d 436 (Okla. 1968). Ionno v. Glen Gery Corp.,2 Ohio St.3d 131, 443 N.E.2d 504 (1983); HNG Fossil Fuel Co. v.Roach, 99 N.M. 216, 656 P.2d 879 (1982); Batex Ohio Co. v.LaBrisa Land Cattle Co., 352 S.W.2d 769 (Tex.Civ.App. 1961).
Moreover, our conclusion is supported by the historical analysis of two distinguished oil and gas commentators:
 "In the early days of oil and gas law, the usual remedy sought and granted for breach of the protection [from drainage] covenant seems to have been cancellation. The doctrinal grounds for such relief are twofold. An implied covenant may be treated as an implied condition subsequent, for breach of which a lessor may reenter and terminate the lease. The support for this theory is weak, since traditionally courts have construed doubtful express provisions as covenants rather than conditions in order to avoid forfeiture. To find a condition by implication runs counter to this line of authority. The better ground for supporting cancellation is the power of equity to grant relief when the remedy of law is inadequate. In the early days of the oil industry, the legal remedy of damages often was inadequate because the scientific knowledge necessary to establish lessor's loss was lacking. . . . *Page 448 
"It is doubtful that this reason for adopting forfeiture as a remedy is valid today. . . ."
5 H. Williams C. Meyers, Oil and Gas Law § 825.1, p. 158-59 (1980).
Regarding the implied covenants of reasonable development, Williams and Meyers state:
 "In most cases the legal remedy is adequate in the sense that damages can be ascertained within reasonable bounds of accuracy. Working in a proven field today, experts are usually capable of determining with reasonable certainty the volume of oil and gas in place, the probable production from a well and the duration of such production."
Id., § 834, p. 231-32.
In the case at bar, the Meahers have not proffered any evidence suggesting that damages as a remedy would be wholly inadequate. Through expert testimony, the Meahers may prove the value of hydrocarbons lost due to drainage. Likewise, the Meahers may prove the financial loss suffered due to Getty's failure to rework or redrill on Section 10. Lastly, the financial loss occasioned by a deficient participation factor, in the unitization agreement as based upon Section 10's "deliverability," may be calculated with certainty.
The Meahers have alleged, and very well may recover under, a valid claim for breach of implied covenants. However, a claim for damages, not cancellation, is their proper recourse.
 IV
The third theory of law upon which the Meahers base their claim for cancellation is abandonment. We reject this argument in light of the conceded production in paying quantities on the remaining lands included within the Meaher lease. In the absence of express terms to the contrary within the lease, oil or gas production in paying quantities on portions of the leased lands will perpetuate the lease as a whole, and the lease may not be regarded as abandoned respecting any portion of the lease. Labbe v. Magnolia Petroleum Co., 350 S.W.2d 873
(Tex.Civ.App. 1961), writ ref'd n.r.e.; see also W.T. WaggonerEstate v. Sigler Oil Co., 118 Tex. 509, 19 S.W.2d 27 (1929).
Thus, whether considered pursuant to a theory of expiration of the lease, breach of implied covenants, or abandonment, the evidence before the trial court presented no genuine issue of material fact respecting claims for partial cancellation. The judgment of the trial court is due to be, and is hereby, affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, ALMON and ADAMS, JJ., concur.
[1] The clause is named after the distinguished attorney accredited with its creation, Lawerence G. Pugh, Sr.
One of its many variations may be found in 4 E. Kuntz, TheLaw of Oil and Gas § 48.4 (a) (1972). It reads:
 "Notwithstanding anything to the contrary herein contained, the commencement of operations for drilling, the drilling or reworking of a well, or the production of oil, gas or other mineral from any well situated on lands included within a unit embracing a portion of the leased premises and other lands not covered hereby shall serve only to maintain this lease in force as to that portion of the leased premises embraced in such unit. . . ."
[2] Paragraph 9 of the Meaher lease includes an express covenant of reasonable development. It reads in pertinent part:
 "After the discovery of oil, gas or other mineral in paying quantities on said premises, Lessee shall reasonably develop the acreage retained hereunder. . . ."
Where an express covenant is contrary to those implied in the lease, the express covenant shall supersede the implied obligation. R. Hemingway, Law of Oil Gas, § 8.4 (1983). However, the express provision in paragraph 9 is consistent in pertinent part with the implied covenant of reasonable development. It is not necessary, therefore, to consider the express and implied covenants separately.