OPINION *Page 2 
{¶ 1} This is an appeal from a judgment of the Tuscarawas County Common Pleas Court that granted judgment in favor of plaintiffs-appellees Kathy and Randy Moore on their complaint against defendant-appellant James M. Adams in regards to an oil and gas lease encumbering appellees' property.
 Statement of Case and Facts {¶ 2} On September 6, 1980, Thomas M. Gardner and Nancy M. Gardner entered into an oil and gas lease with Alsid Oil and Gas Development Company, Inc., covering 101.5 acres in Washington Township, Tuscarawas County, Ohio. The relevant provisions of the lease are as follows:
 {¶ 3} The habendum clause of the lease provides that the lease shall be ". . . for a term of two (2) years and so much longer thereafter as oil, gas or their constituents are produced in paying quantities thereon or operations are maintained on all or part of that certain tract of land. . ." (Joint Exhibit 1).
 {¶ 4} The lease also included a shut-in clause in paragraph 7 which states:
 {¶ 5} "Notwithstanding anything herein to the contrary, this lease shall continue in full force for so long as there is a well or wells on the leased premises capable of producing oil or gas, but in the event all such wells are shut-in for any reason, then on or before the end of each calendar year during which the well or wells are shut-in, Lessee shall pay to Lessor a shut-in royalty equal to the delay rental provided herein."[1] *Page 3 
 {¶ 6} In 1991, appellee Kathy Moore purchased the real estate owned by the Gardners and appellees are now the owners of the acreage. The real estate was encumbered by the above referenced oil and gas lease. There was one well on the property which was producing commercial quantities of gas.
 {¶ 7} On February 19, 1996, Alsid Oil and Gas Development Inc. assigned its interest in appellees' property to appellant. Appellant is an oil and gas operator, owning over 100 wells. Appellant purchased the well from Alsid for $6,000. At the time of the purchase, the well was shut-in. Appellant fixed a leak in the gas line and resumed the production of gas.
 {¶ 8} At some point in late 2000, a third-party damaged the two inch plastic pipeline which transported gas across adjacent properties to the sales line. Appellant testified the cost to repair the line was approximately $2,000. Appellee Randy Moore reported the damage to appellant. Appellant instructed appellees to shut-in the well and they did so. The last production from the well was November, 2000. Appellant testified he has not "done anything since 2001" with the well or equipment. Prior to the damage to the pipeline, appellant marketed the gas from this line to the Belden and Blake. After the damage occurred, Belden and Blake sold to Ener West, who refused to contract with appellant to market the gas. However, appellant conceded that he could not have marketed the gas without fixing the gas line.
 {¶ 9} After the well was shut-in, appellant failed to tender shut-in royalties from 2001 until 2006. He testified that it was just an oversight. On May 31, 2006, appellant mailed a check to appellee Kathy Moore in the amount of $1,515 for shut-in royalties for the period of January 2001 to January 2006. (Plaintiff's Exhibit 4). Appellees did not *Page 4 
cash or return the check. Appellant then mailed a second check on December 29, 2006 in the amount of $303 for shut-in royalties for the period of January 1, 2006 to December 31, 2006. (Plaintiff's Exhibit 5). Appellee did not cash or return the second check.
 {¶ 10} On June 16, 2006, appellees filed a complaint alleging breach of the lease because the well had not produced for six years nor had operations been maintained by appellant. Further, shut-in royalties had not been paid per the terms of the lease. The complaint alleged a breach of implied covenants because appellant failed to exercise reasonable care and due diligence with regard to the gas operation and failed to market the gas. It was also alleged that appellant failed to pay the proper royalties on production. The complaint further alleged appellant abandoned the well and equipment. Appellees asked for forfeiture of the lease. Appellees withdrew their prayer seeking an accounting of the production royalties.
 {¶ 11} At some point shortly before the lawsuit was filed, appellant entered into negotiations to market the gas with an individual named Jim Hagan. In approximately May 2007, a sales contract was executed between appellant and Jim Hagan to market the gas.
 {¶ 12} The trial court held a bench trial on June 21, 2007. After the parties submitted proposed findings of fact and conclusions of law, the trial court issued a judgment entry on August 20, 2007, which found the appellant failed to maintain operations for six years and failed to tender shut-in royalties per the lease. The trial court concluded this failure terminated the lease by its express terms. The trial court further found appellant violated implied covenants of the lease and forfeited the lease. *Page 5 
Finally, the trial court found that appellant had abandoned the leasehold premises and equipment and title to same was vested in appellees.
 {¶ 13} Appellant appeals and raises five Assignments of Error:
 {¶ 14} "I. THE COURT ERRED IN DETERMINING THAT THE PLAINTIFF NEED ONLY PROVE HER CASE BY A PREPONDERANCE OF THE EVIDENCE.
 {¶ 15} "II. THE COURT ERRED IN FINDING THAT THE LEASE TERMINATED BY ITS EXPRESS TERMS CONTRARY TO THE RULES OF EQUITY.
 {¶ 16} "III. THE COURT ERRED IN HOLDING BY IMPLICATION THAT A LEASE CANNOT BE HELD WITHOUT ACTUAL PRODUCTION.
 {¶ 17} "IV. THE COURT ERRED IN ITS ORDER OF FORFEITURE OF THE LEASE CONTRARY TO EQUITY AND SPECIFICALLY BEER V. GRIFFITH (1980), 61 OHIOST.2D 119.
 {¶ 18} "V. THE COURT ERRED IN ITS FINDING THAT THE APPELLEE HAD ABANDONED THE LEASEHOLD PREMISES AND THE WELL EQUIPMENT.
 Standard of Review {¶ 19} The questions presented for our review are questions of law and fact. "Our standard of reviewing decisions on questions of law is de novo, but this court may not substitute its judgment for that of the trier of fact regarding findings of fact if the findings are supported by competent and credible evidence." Warne v. Bamfield, 5th App. No. 2005-CA-33, 2006-Ohio-850, citing Steiner v. L.M.R. Contracting,Inc. 11th App. No. 2002-P-0056, 2003-Ohio-4865, citations deleted. *Page 6 
 I. {¶ 20} In his first assignment of error, appellant argues the trial court erred in concluding that appellees must prove their claims by a preponderance of the evidence. He contends the trial court should have applied a clear and convincing burden of proof because appellees asserted a claim of abandonment and sought the equitable remedy of forfeiture. We disagree.
 {¶ 21} With respect to oil and gas leases, the Supreme Court of Ohio in Harris v. Ohio Oil Co. (1897), 57 Ohio St. 118, 129, 48 N.E. 502
stated: "The rights and remedies of the parties to an oil or gas lease must be determined by the terms of the written instrument, and the law applicable to one form of lease may not be, and generally is not, applicable to another and different form. Such leases are contracts, and the terms of the contract with the law applicable to such terms must govern the rights and remedies of the parties." See also Morrison v.Petro Evaluation Services, Inc., 5th App. No. 2004CA0004,2005-Ohio-5640; citing Lake v. Ohio Fuel Gas Co. (1965),2 Ohio App.2d 227, 231, 207 N.E.2d 659.
 {¶ 22} Ohio courts have held that the elements for a breach of contract are that a plaintiff must demonstrate by a preponderance of the evidence (1) that a contract existed, (2) that the plaintiff fulfilled his obligations, (3) that the defendant failed to fulfill his obligations, and (4) that damages resulted from this failure."Circuit Solutions, Inc. v. Mueller Electric Company, 9th App. No. 07CA009139, 2008-Ohio-3048; Farmers Market Drive-In Shopping Centers v.Magana, 10th App. No. 06AP-532, 2007-Ohio-2653; see also, Spano BrothersConstr. Co., Inc. v. Adolph Johnson Son Co., 9th App. No. 23405,2007-Ohio-1427, at ¶ 12, citing Lawrence v. Lorain Cty. Community *Page 7 College (1998), 127 Ohio App.3d 547, 548-549; see, also, Clair v. FirstAm. Title Ins., 9th App. No. 23382, 2007-Ohio-1681, at ¶ 12. We further note a trial court's finding of abandonment will be affirmed if adequately supported by the evidence. See, North Star Oil and Gas Co. v.Blubaugh, 5th App. No. CA 328, 1981 WL 6434, *2.
 {¶ 23} In regards to the remedy of forfeiture or cancellation of an oil and gas lease, it is an equitable remedy that rests within the discretion of the trial court. Ohio courts have recognized that forfeiture is an appropriate remedy when legal damages resulting from a contractual breach are inadequate; upon a breach of implied covenants; upon a claim of abandonment; or when necessary to do justice. See,Beer v. Griffith (1980), 61 Ohio St.2d 119, 399 N.E.2d 1227, at syllabus 4 (where legal remedies are inadequate, forfeiture or cancellation of an oil and gas lease, in whole or in part, is an appropriate remedy for a lessee's violation of an implied covenant); Wohnhas v. Shepherd (1954), 54 O.O. 436, 119 N.E.2d 861 (abandonment is recognized in Ohio as a ground for cancellation of oil and gas lease)
 {¶ 24} We find the trial court correctly applied a preponderance of the evidence burden of proof to appellees' claims. Accordingly, appellant's first assignment of error is overruled.
 II. and III. {¶ 25} We will address appellant's second and third assignments of error simultaneously as they are factually interrelated. Appellant contends the trial court erred in finding the lease terminated by its express terms. Appellant also argues the trial court committed error when it found appellant had breached the implied duty to operate the well and market the product. *Page 8 
 {¶ 26} We will first address whether appellant breached the express terms of the lease. In this case, the habendum clause has two parts. The first part, or the primary term, is of definite duration and is two years. The second part is of indefinite duration and operates to extend the lease for "so much longer thereafter as oil, gas or their constituents are produced in paying quantities thereon or operations are maintained on all or part of that certain tract of land . . .".
 {¶ 27} The trial court relied on American Energy Services, Inc. v.Lekan (1992), 75 Ohio App.3d 205, 212, 598 N.E.2d 1315, in which this Court agreed that: "[i]If after the expiration of the primary term [of an oil and gas lease] the conditions of the secondary term are not continuing to be met, the lease terminates by the express terms of the contract herein and by operation of law and revests the leased estate in the lessor." American Energy Services, supra; citing, Gisinger v.Hart (1961), 115 Ohio App. 115, 20 O.O.2d 226, 184 N.E.2d 240.
 {¶ 28} In this case, the term of the lease was dependent upon the production of gas in paying quantities or operations are maintained on the property. Appellant testified that the last production period from the well was October 2, 2000 through November 13, 2000. T. at 110. Appellant further testified that he has not "done anything since 2001" with the well. T. at 26. This is exemplified by Plaintiff's Exhibits 16-25 which depict rusted equipment with peeling paint and detached pipes. T. at 48-53. Appellant testified the cost to repair the equipment was $2,000.00 and that he did not make the necessary repairs. T. at 92. Because the equipment was not in working order for a period in excess of six years, appellant failed to produce gas in paying quantities and maintain operations. The trial court found that the failure to produce gas *Page 9 
in paying quantities for over six years expressly violated the terms of the habendum clause of the oil and gas lease; therefore, the lease terminated by its own terms. See also, Hanna v. Shorts (1955),163 Ohio St. 44, 49, 125 N.E.2d 338 (stating there can be no production in paying quantities if there is no production at all).
 {¶ 29} Upon review of the record, we find the trial court's determination that appellant breached the express terms of the lease is sufficiently supported by the evidence.
 {¶ 30} Appellant also argues he paid the shut-in royalties so termination of the lease could be avoided. Appellant testified that he paid the shut-in royalties for the years 2001 through 2006 in 2006. T. at 29-30. This attempted payment is contrary to the express language of the shut-in clause of the lease. The lease states the royalty payments should be paid before the end of each calendar year during which the well is shut-in. The trial court found that appellant failed to pay the shut-in royalties pursuant to the express terms of the lease. Based upon the testimony adduced at trial, we also find this conclusion is supported by competent and credible evidence.
 {¶ 31} Next, we will address whether appellant breached the implied covenants of the lease. We analyzed a similar issue in American EnergyServices, supra, wherein it was found: "[t]his court therefore finds that in every lease, unless it is specifically excluded, there is an implied condition that the lessee will operate the lease with due diligence. See Tedrow v. Shaffer, 24 Ohio App. 343, 155 N.E. 510. The court finds that the subject oil and gas lease does not by its language negate the imposition of implied covenants. There are several generally recognized implied covenants in oil and gas leases and these include the following: *Page 10 
 {¶ 32} "1. The covenant to drill an initial exploratory well.
 {¶ 33} "2. The covenant to protect the lease from drainage.
 {¶ 34} "3. The covenant of reasonable development.
 {¶ 35} "4. The covenant to explore further.
 {¶ 36} "5. The covenant to market the product.
 {¶ 37} "6. The covenant to conduct all operations that affect the lessor's royalty interest with reasonable care and due diligence. See 5 Williams Meyers, Oil and Gas Law (1991).
 {¶ 38} The covenant to market the product places an obligation upon a lessee to use due diligence to market the gas and/or oil produced from a well. This covenant is not eliminated by a shut-in royalty clause. A shut-in royalty clause modifies the habendum clause so that the lease may be preserved between the time of discovery of product and marketing of the same. It is a savings clause, but it certainly does not negate the duty to use due diligence to sell the production." Id.
 {¶ 39} The evidence in this case demonstrates appellant did not operate the well for over six years and the equipment was in disrepair. Appellant did not attempt to market the gas until the pendency of this lawsuit. "[W]hen interruptions occur, the lessee is obligated to exercise reasonable diligence to place the well back into production." Id.; citing, Wagner v. Smith (1982), 8 Ohio App.3d 90, 8 OBR 124,456 N.E.2d 523. Critical to this evaluation is how long the well is out of production. Wagner v. Smith, supra, citing, Jath Oil Co. v. Durbin (Okl. 1971), 490 P.2d 1086. "A review of the reported cases reflects that while courts tend to hold the cessation of production temporary when the time periods are short, lessees have, for the most part, been held *Page 11 
not to have proceeded diligently when the cessation from production exists for two years or more." Id. at 94.
 {¶ 40} Upon review of the record, we find the trial court's decision that appellant failed to conduct operations and market the product with reasonable care and due diligence was supported by competent and credible evidence.
 {¶ 41} Accordingly, appellant's second and third assignments of error are overruled.
 IV. {¶ 42} In his fourth assignment of error, appellant contends that the trial court erred in awarding forfeiture of the lease because equity disfavors forfeitures and the lease does not contain a forfeiture clause.
 {¶ 43} Appellant relies upon the Ohio Supreme Court's decision inBeer v. Griffith, supra, for support of his position that the remedy for a breach of an implied covenant in an oil and gas lease, without more, is damages, and not forfeiture of the lease, in whole or part.
 {¶ 44} In American Energy Services, supra, this Court stated, as follows:
 {¶ 45} "In Beer v. Griffith (1980), 61 Ohio St.2d 119, 15 O.O.3d 157,399 N.E.2d 1227, the lessee had completed one producing well on the property but was unable to complete a second well due to insolvency. The second well remained partially completed for approximately one year. The lessor instituted an action to obtain a forfeiture of the lease. The court noted that absent express provisions to the contrary, an oil and gas lease includes an implied covenant to reasonably develop the land. In this case, the oil and gas lease does not contain a clause that negates the imposition of *Page 12 
implied covenants. The court in relying upon its decision in Harris v.Ohio Oil Co. (1897), 57 Ohio St. 118, 48 N.E. 502, noted that where certain causes of forfeiture are specified in an oil and gas lease, others cannot be implied. Under such a lease, the court found the remedy for a breach of an implied covenant, without more, to be damages, and not forfeiture of the lease, whole or in part. The court went on, however, to note that where legal remedies are inadequate, forfeiture or cancellation of an oil and gas lease, in whole or in part, is an appropriate remedy for a lessee's violation of an implied covenant. InBeer, the court forfeited a portion of the oil and gas lease in issue. In doing so, the court noted that the lessee had performed no work on the leased premises for over one year. The court also took notice of the lessee's financial and operating difficulties, which it felt would render a mere damage award inadequate. In forfeiting a portion of the undeveloped acreage, the court noted that it was doing so in order to assure the development of the land and the protection of the lessor's interest." Id. at 215-216.
 {¶ 46} The Supreme Court of Ohio in Ionno v. Glen-Gery Corp. (1983), 2 Ohio St.3d 131, 135, 443 N.E.2d 504, confirmed a limited right to forfeiture for breach of an implied covenant and stated as follows:
 {¶ 47} "Thus, the Beer decision does not stand for the proposition that forfeiture can never be imposed where there is a breach of an implied covenant. Such relief will be granted when necessary to do justice to the parties, even though specific grounds for forfeiture are set forth in the lease. See Beer, supra. However, inasmuch as forfeiture is an equitable remedy, a strong showing of a violation of a clear right is required before a court will resort to such an extreme measure." *Page 13 
 {¶ 48} The rationale for allowing forfeiture is that fact that "the real consideration for the lease is the expected return derived from the actual mining of the land' not the rental income. Barkacs v.Perkins, 165 Ohio App.3d 576, 847 N.E.2d 481, 2006-Ohio-469 at ¶ 14, quoting, Ionno v. Glen-Gery Corp., supra. "Because the lessor expected income from the lessee's drilling or mining of the property, the Ohio Supreme Court recognized that the lessee's failure to drill or mine within a reasonable period of time `would allow a lessee to encumber a lessor's property in perpetuity,' without any return of income to the lessor arising out of mining or drilling operations. In such instances, the court held that breach of the implied covenant to mine or drill within a reasonable time could result in grounds for forfeiture, so long as the lessor established that damages would be an inadequate remedy." Id.
 {¶ 49} In the case sub judice, the trial court granted forfeiture of the lease as sought by appellees. The evidence adduced at trial established appellant breached both the express terms of the contract as well as implied covenants of the lease. Also, as explained below, there was sufficient evidence that appellant abandoned well. We note appellees did not demand damages rather they sought forfeiture of the lease. The trial court concluded that appellant failed to operate the well for more than six years and this affected appellee's royalty interest in the well.
 {¶ 50} The evidence further demonstrates appellant failed to exercise reasonable diligence and good faith in attempting to resume production of the well. Appellant's belated attempts to market the gas and to pay the overdue royalties occurred near the commencement of litigation. Appellees testified they had no contact with Mr. Adams *Page 14 
since 2001; no one had been to site to add or remove any equipment; and a notice of violation was recently issued by the county inspector for the well to Mr. Adams.
 {¶ 51} Therefore, we find the trial court properly exercised its discretion to order a forfeiture of the lease. Appellant's fourth assignment of error is overruled.
 V. {¶ 52} Finally, appellant argues the trial court's finding that appellant abandoned the lease and the equipment was not supported by the evidence and the lease prohibited abandonment.
 {¶ 53} "Ohio courts have recognized that an oil and gas lease may be abandoned by a lessee." American Energy Services, supra; citing,Wohnhas v. Shepherd (C.P. 1954), 54 O.O. 436, 119 N.E.2d 861. The passage of time alone is insufficient, but the absence of any activity on the property over a substantial period of time is a factor that should be considered in light of all the circumstances leading to a determination of relinquishment of possession, both as to the lease and the equipment thereon. Id. In North Star Oil Gas Co. v. Blubaugh (Oct. 6, 1981), 5th App. No. CA-328, unreported, 1981 WL 6434, the lessee ceased operations and removed the surface equipment from the leasehold but left the well casing in the ground. After eight years, the lessee brought an action to prevent the landowner from disposing of the casing. Id. The court held that due to the passage of eight years, the lessee had abandoned the casing, and title to the same was left in the landowner. Id.
 {¶ 54} This case is much like North Star Oil. It is undisputed that appellant failed to operate the well for a considerable period of time; he left the equipment in a state of disrepair; failed to pay shut-in royalties, and did not visit the property or inspect or repair *Page 15 
the equipment at any point. Taking in consideration all these undisputed facts, we find the trial court's conclusion that appellant abandoned the lease and equipment located on the property is supported by competent and credible evidence.
 {¶ 55} Appellant's fifth assignment of error is overruled.
 {¶ 56} The judgment of the Tuscarawas County Common Pleas Court is affirmed.
 Delaney, J., Gwin, P.J., and Edwards, J., concur. *Page 16 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Tuscarawas County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] The lease provided that the amount of the delay rental was $303.00 per year. *Page 1