[Cite as *Mosholder v. Briae Hill Stone Co.*, 2023-Ohio-1280.]

COURT OF APPEALS
COSHOCTON COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| CHARLES MOSHOLDER | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellant | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | |
| THE BRIAR HILL STONE COMPANY | : | Case No. 2022CA00031 |
| | : | |
| Defendant-Appellee | : | O P I N I O N |


CHARACTER OF PROCEEDING:        Appeal from the Court of Common
Pleas, Case No. 2021CI0025



JUDGMENT:        Reversed and Remanded



DATE OF JUDGMENT:        April 19, 2023



APPEARANCES:

For Plaintiff-Appellant        For Defendant-Appellee

MATTHEW W. ONEST        NICHOLAS D. ATTERHOLT
6715 Tippecanoe Road, Suite 2C        10 East Main Street
Canfield, OH  44406        Ashland, OH  44805

*King, J.*

{¶ 1}　Plaintiff-Appellant, Charles Mosholder, appeals the September 14, 2022 order of the Court of Common Pleas of Coshocton County, Ohio, denying his motion for summary judgment and granting the motion for summary judgment filed by Defendant-Appellee, The Briar Hill Stone Company.　We reverse the trial court.

FACTS AND PROCEDURAL HISTORY

{¶ 2}　In 2018, Mosholder purchased approximately 231 acres in Coshocton County.　Of the 231 acres, approximately 114 acres were encumbered by a mineral rights lease to quarry stone granted to Briar Hill in 1993 by Leora C. Scott, the predecessor in interest to the subject acreage.　Briar Hill is in the business of quarrying rock and stone. The habendum clause of the lease granted a primary term of fifteen years, from February 27, 1993 to February 26, 2008.　During this primary term, Briar Hill did not have to quarry stone and the lease could not expire nor be terminated.　A secondary term could continue as long as Briar Hill desired to operate, and quarry stone from the acreage.　Briar Hill was also obligated to pay all rents and royalties per the terms of the lease, a minimum of $200.00 per year.　Both parties agree Briar Hill has not quarried any stone under the 1993 lease, but Briar Hill has paid $200.00 per year since the inception of the lease.

{¶ 3}　On August 5, 2020, Mosholder recorded an affidavit of abandonment of mineral interest regarding the acreage under the lease.　On August 21, 2020, Briar Hill recorded an affidavit and notice of claim to preserve mineral interest in land.

{¶ 4}　On February 1, 2021, Mosholder filed a complaint against Briar Hill alleging breach of contract, declaratory judgment, and to quiet title.　Mosholder sought in part termination and forfeiture of the lease.

{¶ 5}  Both parties filed motions for summary judgment.  Mosholder argued the primary term of the lease had expired and the secondary term was unenforceable because it did not impose any legal obligation on Briar Hill to act, Briar Hill abandoned the lease by failing to quarry stone, the lease had expired due to non-production, and the lease was void under public policy.  Briar Hill argued it was not required to quarry stone under the lease, and was only required to follow all rules of the Ohio Department of Natural Resources and to pay $200.00 per year to the property owner.  By order filed September 14, 2022, the trial court denied Mosholder's motion and granted Briar Hill's. The trial court found Briar Hill had complied with the terms of the lease by paying Mosholder "the $200.00 rental fee," Briar Hill had not abandoned the lease, and the complaint was filed beyond the statute of limitations.

{¶ 6}  Mosholder filed an appeal with the following assignment of error:

I

{¶ 7}  "THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT TO APPELLEE BECAUSE THE TRIAL COURT (1) IGNORED THE LEASE'S SECONDARY TERM CONDITIONS, (2) CONFLATED A MINERAL LEASE'S ANNUAL MINIMUM ROYALTY CLAUSE WITH A DEVELOPMENT CLAUSE, (3) CONFLATED A MINERAL LEASE'S ANNUAL MINIMUM ROYALTY CLAUSE WITH A FORFEITURE CLAUSE, (4) APPLIED THE WRONG STATUTE OF LIMITATIONS PERIOD, AND (5) APPLIED THE WRONG STANDARD FOR DETERMINING WHEN APPELLANT'S CLAIMS ACCRUED."

I

{¶ 8}  In his sole assignment of error, appellant claims the trial court erred in granting summary judgment to appellee.  We agree.

{¶ 9}   Summary judgment motions are to be resolved in light of the dictates of Civ.R. 56.   Said rule was reaffirmed by the Supreme Court of Ohio in *State ex rel. Zimmerman v. Tompkins,* 75 Ohio St.3d 447, 448, 663 N.E.2d 639 (1996):

> Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made.   *State ex. rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379, citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.

{¶ 10}  As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court.  *Smiddy v. The Wedding Party, Inc.,* 30 Ohio St.3d 35, 506 N.E.2d 212 (1987).

{¶ 11}  Mineral leases typically have two terms: a primary term and a secondary term.  *State ex rel. Claugus Family Farm, L.P. v. Seventh District Court of Appeals*, 145 Ohio St.3d 180, 2016-Ohio-178, 47 N.E.3d 836, ¶ 20.  The primary term usually features a fixed term along with the right, but not the obligation, of the lessee to improve the land.

*Hupp v. Beck Energy Corp.*, 2014-Ohio-4255, 20 N.E.3d 732, ¶ 87-89 (7th Dist.), *aff'd,*
145 Ohio St.3d 180, 2016-Ohio-178, 47 N.E.3d 836, ¶ 42 [*Claugus*].

{¶ 12} During the primary term, the lease payments are sometimes referred to as
delay rental payments. This is because the lessee can, during the primary term, delay
any obligation to undertake improvements to the land that would ordinarily generate
royalties for the lessor. *Hupp* at ¶ 91-98.

{¶ 13} In contrast, delay rental payments in lieu of development is generally
prohibited in the secondary term. *Id.* at ¶ 99; *Claugus* at ¶ 25. The Supreme Court of
Ohio has stated that "[l]ong-term leases of mineral rights under which there is no
development of the land are void as against public policy." *Claugus* at ¶ 21, citing *Ionno
v. Glen-Gery Corp.,* 2 Ohio St.3d 131, 134, 443 N.E.2d 504 (1983). To avoid enforcing
indefinite leases that fail to require any development, courts will read the contract to
include an implied covenant to develop in a reasonable time. *Claugus* at ¶ 21-22; *Ionno*
at 132-133.

{¶ 14} Here, the contract contained both a primary term with delay rental payments
and a secondary term. It reads as follows:

> 2. The term of this lease shall be for a period of fifteen years from the
> date hereof and as long thereafter as Second Party, its successors and
> assigns, may desire to operate, and quarry stone from said premises as
> provided in the preceding paragraph, provided, however, Second Party
> shall pay the rents and royalties and observe the covenants of this lease.
>
> * * *

4. Second Party hereby agrees and covenants to pay to the First Party, his heirs and assigns, for the stone quarried and removed from said premises and sold or otherwise marketed by Second Party, its successors and assigns, the sum of Two Cents (2¢) per cubic foot for all marketable stone removed from said premises, provided, however, that Second Party, its successors and assigns, shall quarry sufficient stone to amount to a yearly royalty of Two Hundred Dollars ($200.00), or pay said Two Hundred Dollars ($200.00) minimum lease rental for the continuation of this lease.

{¶ 15} This lease contains a primary term of fifteen years.  The secondary term is "as long thereafter as [Lessee], may desire to operate, and quarry stone from said premises * * *."  For both the primary and secondary term, the lease agreement requires the lessee to pay rents and royalties as cited above.

{¶ 16} There is no dispute between the parties that during the primary term, Briar Hill paid the delay rental payments and there was no breach of the agreement.  The parties also agree no development has occurred during the secondary term.  As a result, no royalties have been paid.  Instead, Briar Hill continued to pay the delay rental payment. It contends the agreement vests it with broad discretion in whether to develop the property and the delay rental payment is sufficient to retain its interest in the property.

{¶ 17} In its September 14, 2022 judgment entry, the trial court found Briar Hill "has annually paid the $200.00 rental fee" as required in the lease contract.  The issue before this court thus is whether the payment of delay rental payments in the secondary term can indefinitely extend the lease.  We hold here that it does not.

{¶ 18} The structure of this lease with regard to the primary and secondary terms and the delay rental payments is similar to the lease the Seventh District reviewed in *Hupp,* 2014-Ohio-4255, 20 N.E.3d 732. In both cases, the option to either begin production (and thus pay a royalty) or pay the delay rental payment is found in a paragraph separate from the habendum clause. *Id.* at ¶ 83. In *Hupp*, the trial court had interpreted the two provisions, when read together, to extend the lease in perpetuity. *Id.* at ¶ 84. The Seventh District reversed, holding, in part, that the delay rental provision only applied to the primary term. *Id.* at ¶ 99. On review, the Supreme Court of Ohio agreed with the Seventh District that this was the proper way to interpret the contract. *Claugus,* 145 Ohio St. 3d 180, 2016-Ohio-178, 47 N.E.3d 836, at ¶ 25-26.

{¶ 19} We interpret this lease contract similarly: the delay rental payment operates only during the primary term. We turn first to the language the parties used here. The parties agreed the term of the lease will be extended so long as "[Briar Hill] may desire to operate, and quarry stone from said premises * * * [and] shall pay the rents and royalties and observe the covenants of this lease." The trial court construed this as to not require an obligation to produce stone; we disagree.

{¶ 20} The duty to pay the rent or royalty in the secondary term is not independent of the obligation to operate and quarry stone. Under this language, Briar Hill indeed retains the discretion regarding whether to quarry, and it may do so without consequence during the primary term. But once that primary term ends, the extension of the lease is dependent on it quarrying stone.

{¶ 21} Briar Hill argues it had no duty to develop, even in the secondary term, because it was holding the lease in reserve. Briar Hill claimed its business needs require that it have a ready reserve of stone in the event temporary demand exceeds current

capacity. This may be so, but Ohio has long required that mineral leases must have development during the secondary term, otherwise the lease is against public policy. *Hupp* at ¶ 94-98; *Claugus* at ¶ 21. Thus, we conclude Briar Hill is in breach of its obligation to reasonably develop the property.

{¶ 22} This conclusion is bolstered by the Supreme Court of Ohio's decision in *Ionno,* 2 Ohio St.3d 131, 443 N.E.2d 504. In *Ionno*, the lessors sought forfeiture of a coal and clay lease because it contained no obligation by lessees to develop the mineral resources and the lessees had not voluntarily done so. *Id.* at 132-133. The trial court "refused to apply any implied duty to perform the mining lease within a reasonable time," relying solely on the lease which did not expressly require the lessees to develop the land. *Ionno v. Glen Gery Corp.*, 5th Dist. Stark No. CA-5667, 1981 WL 6511, *1 (Nov. 25, 1981).

{¶ 23} In reversing the trial court, the Fifth District held the obligation to reasonably develop the property should have been implied into the contract. *Id.* at *2-3. The Fifth District concluded the lessees breached this implied provision and forfeiture was the appropriate remedy: "To permit Defendants-Lessees herein forever to pay the $600.00 advance royalty and to not work the lease would be to pervert the very purpose in the granting of the original lease and we are finding that the complete inactivity of Defendants-Appellees is mining the premises for the past twenty-one years entitles Plaintiffs-Appellants to forfeiture and to termination of this lease." *Id.* at *4.

{¶ 24} The Supreme Court of Ohio upheld the Fifth District's decision regarding the implied covenant of reasonable development, but it reversed on whether forfeiture was the appropriate remedy. *Ionno* at 134-135. Thus, even if this court were not to find

that Briar Hill expressly agreed to develop the property during the lease's secondary term, we would be obligated to impose it as a matter of law.

{¶ 25} Further, in this case, just as in *Ionno*, Mosholder sought forfeiture of the lease. The trial court declined to address this question, relying primarily on the conclusion that Mosholder had failed to bring the case within the eight-year statute of limitations under R.C. 2305.06. The trial court concluded the secondary term began in 2008 and the action should have been brought by 2016. We disagree.

{¶ 26} Under R.C. 2305.04, the appropriate statute of limitation for this action is 21 years. *Browne v. Artex Oil Co.*, 158 Ohio St. 3d 398, 2019-Ohio-4809, 144 N.E.3d 378 (2019). In *Browne,* the Supreme Court of Ohio reviewed what was the proper statute of limitations for actions such as this one, and concluded it was R.C. 2305.04. *Id.* at ¶41-42.

{¶ 27} It is unclear on what basis the trial court was distinguishing *Browne* from this case, but R.C. 2305.04 supplies the correct statute of limitations. Because the earliest this cause of action could have accrued was 2008, the statute of limitations would not run until 2029. Thus, Mosholder timely brought his action in 2021.

{¶ 28} We turn now to the issue of forfeiture of the lease. In *Ionno*, the Supreme Court of Ohio held that "the lessor has the burden of proving damages are inadequate before such forfeiture may be declared. In the absence of any proof of such damages, it would be inequitable to declare a forfeiture in favor of a new purchaser of property who took the land subject to the terms of the lease and accepted the obligations of such lease." *Ionno,* 2 Ohio St.3d at 135, 443 N.E.2d 504.

{¶ 29} Here, Mosholder seemingly purchased the property subject to this lease, but he is seeking forfeiture of the lease that pre-existed his purchase. Although the trial

court acknowledged that Mosholder raised the issue of forfeiture, it did not address the merits of this issue.  In the absence of evidence before this court, we decline to rule on this issue for the first time.  The matter is remanded to the trial court to determine what is the appropriate remedy for Briar Hill's breach.

{¶ 30} Upon review, we find the trial court erred in granting summary judgment to Briar Hill.

{¶ 31} The sole assignment of error is granted.

{¶ 32} The judgment of the Court of Common Pleas of Coshocton County, Ohio is hereby reversed, and the matter is remanded to said court for consideration of the appropriate remedy for Briar Hill's breach.

By King, J.

Hoffman, P.J. and

Baldwin, J. concur.


AJK/db

[Cite as *Mosholder v. Briae Hill Stone Co.*, 2023-Ohio-1280.]