[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Claugus Family Farm, L.P. v. Seventh Dist. Court of Appeals,* Slip Opinion No. 2016-Ohio-178.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-178

THE STATE EX REL. CLAUGUS FAMILY FARM, L.P. *v.* SEVENTH DISTRICT COURT OF APPEALS ET AL.

HUSTACK ET AL., APPELLANTS, *v.* BECK ENERGY CORPORATION, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Claugus Family Farm, L.P. v. Seventh Dist. Court of Appeals,* Slip Opinion No. 2016-Ohio-178.]

*Oil and gas leases—Class certification—Validity of leases—Covenant to reasonably develop the land—Delay rentals do not extend beyond the fixed term of a lease.*

(Nos. 2014-0423 and 2014-1933—Submitted December 15, 2015—Decided January 21, 2016.)

IN MANDAMUS and PROHIBITION.

APPEAL from the Court of Appeals for Monroe County, Nos. 12 MO 6, 13 MO 2, 13 MO 3, and 13 MO 11, 2014-Ohio-4255.

_____

**FRENCH, J.**

{¶ 1} These consolidated actions, an original action in this court and an appeal of a judgment of the Seventh District Court of Appeals, address the interpretation of a number of nearly identical oil and gas leases. The appeal challenges the Seventh District's interpretation of the leases in a class action. The original action seeks writs of prohibition and mandamus. In the original action, relator, Claugus Family Farm, L.P. ("Claugus Family"), an absent and unnamed plaintiff in the class action, challenges the Seventh District's order tolling the leases in the class action.

{¶ 2} We affirm the judgment of the court of appeals in case No. 2014-1933, because the leases set forth a definite period of ten years in which development must occur. We also deny a writ of mandamus or of prohibition in case No. 2014-0423 because Claugus Family had an adequate remedy in the ordinary course of law by moving to intervene in the appeal and because the Seventh District did not patently and unambiguously lack jurisdiction to issue an order tolling the leases pending appeal. Finally, we deny Beck Energy Corporation's motions to toll the terms of the leases.

*Statement of Facts*

***Hustack v. Beck Energy Corp.*, case No. 2014-1933 ("the appeal")**

{¶ 3} In September 2011, appellants, Larry A. and Lori Hustack, along with Clyde A. and Molly A. Hupp, who did not remain parties to the lawsuit when the complaint was amended, filed suit against appellee, Beck Energy Corporation, in the Monroe County Court of Common Pleas. The Hustacks are successors in interest to lessors who signed a lease known as a "Form G&T (83) lease" with Beck Energy in 2008. The lease contains blank lines for the lessors' names, for the period during which a well was to be commenced unless delay rental—that is, an amount paid to the landowner in lieu of development—was paid, for the amount of the delay rental, and for other information.

2

{¶ 4} The complaint sought a judgment declaring that the Form G&T (83) leases were void as against public policy and to quiet title. A subsequently amended complaint asserted claims on behalf of a class of over 400 Monroe County landowners ("the landowners") who had signed Form G&T (83) leases with Beck Energy.[1]

{¶ 5} In February 2012, the landowners moved for summary judgment. In July 2012, the trial court granted summary judgment to the named plaintiffs, finding that the Form G&T (83) leases were void because they were leases in perpetuity in violation of Ohio public policy. Beck Energy appealed that judgment.

{¶ 6} The landowners then filed a motion for class certification under Civ.R. 23(B)(2). On October 1, 2012, Beck Energy moved to toll the operation of the original leases. In February 2013, the trial court granted class certification under Civ.R. 23(B)(2), noting that 415 landowners in Monroe County and 200 to 300 landowners in other counties were affected.

{¶ 7} Beck Energy appealed the order certifying the class, and the court of appeals remanded for the trial court to define the class more clearly. The trial court redefined the class as all Ohio lessors subject to a Form G&T (83) lease with Beck Energy on whose land no preparations for drilling had occurred. The court also applied its entry granting summary judgment to all members of the class as it existed on September 29, 2011, the date an amended complaint asserted class claims. Beck Energy again appealed the class certification, but that appeal was unsuccessful, and Beck Energy has not sought further review of that issue. *Hupp v. Beck Energy Corp.*, 2014-Ohio-4255, 20 N.E.3d 732, ¶ 76 (7th Dist.).

{¶ 8} In June 2013, the landowners unsuccessfully sought the trial court's approval of notice to the class and Beck Energy's list of the class of lessors.

---

[1] After the landowners filed the complaint, Beck Energy assigned certain mineral rights to XTO Energy, Inc. Beck Energy retained a royalty interest in the leases and agreed to defend title to the leases against any claims.

**{¶ 9}** In July 2013, on Beck Energy's motion, the trial court tolled the leases of only the named plaintiffs pending the outcome of Beck Energy's appeal on the merits. Beck Energy appealed the tolling order.

**{¶ 10}** The Seventh District issued an order on September 26, 2013, modifying the trial court's tolling order to include all class members as of October 1, 2012, the date Beck Energy first moved to toll the terms of the leases.

**{¶ 11}** Exactly one year later, on September 26, 2014, the Seventh District held that the trial court had misinterpreted the lease provisions and Ohio case law and had erred in concluding that the Form G&T (83) lease was a perpetual lease that was void ab initio as against public policy. 2014-Ohio-4255, 20 N.E.3d 732, ¶ 104. The lease, according to the Seventh District, has a primary term of a definite duration and a secondary term that extends the lease if certain conditions are met, but allows the payment of delay-rental provisions only during the primary term. In addition, the Seventh District held that the trial court erred in concluding that the lease was subject to implied covenants and that Beck Energy had breached the implied covenant to develop. *Id.* at ¶ 122.

**{¶ 12}** The parties stipulated to tolling the leases between Beck Energy and the class pending a timely appeal to this court. The landowners then sought review of the Seventh District's judgment regarding the validity of the lease as well as the tolling of the leases of the unnamed class members. On January 28, 2015, we granted jurisdiction on only the following two propositions of law, *see Hupp v. Beck Energy Corp.*, 141 Ohio St.3d 1454, 2015-Ohio-239, 23 N.E.3d 1196:

> [I.] An oil and gas lease which can be maintained indefinitely without development is a perpetual lease that is void as against public policy. That a lease purports to establish a fixed term is of no consequence if the duration of that term can be extended without development.

[II.] Where the express terms of an oil and gas lease effectively allow the lessee to postpone development indefinitely, and any stated time limits can be unilaterally extended by the lessee in perpetuity without any development, the lease is subject to an implied covenant of reasonable development notwithstanding a general disclaimer of all implied covenants.

### *State ex rel. Claugus Family Farm, L.P. v. Seventh Dist. Court of Appeals*, case No. 2014-0423 ("the original action")

{¶ 13} Claugus Family, which was not a named plaintiff in the appeal, owns a tract of land in Monroe County. A prior owner of the land had signed a Form G&T (83) lease with Beck Energy. According to Claugus Family, during the first ten years of the lease on its property, no well was drilled, no oil or gas was produced, Beck Energy did not search for oil or gas, and Beck Energy expressed no intent regarding future production. Claugus Family claims that the lease expired on February 3, 2014.

{¶ 14} On September 30, 2013, in anticipation of the expiration of the Beck Energy lease, Claugus Family signed an oil and gas lease with Gulfport Energy Corporation ("Gulfport") for the same property. The Gulfport lease allowed 90 days for Gulfport to review the title to the property for defects and 180 days for Claugus Family to cure any title defects. Claugus Family asserts that Gulfport, upon being told of the tolling order in the appeal, informed Claugus Family that the tolling order was a title defect.

{¶ 15} Claugus Family then filed a complaint in this court naming the Seventh District Court of Appeals and three judges on that court as respondents. Beck Energy has been granted leave to intervene in the action.

{¶ 16} Claugus Family asserts that the order in the appeal tolled its lease with Beck Energy retroactively to October 1, 2012, without notice. Claugus Family

claims that the tolling order negatively affected the value of its property, violated its right to due process, and violated the rights of other landowners and that it might expose the landowners to liability for breach of contract. Claugus Family claims that it had or has no plain and adequate remedy in the ordinary course of law.

{¶ 17} Claugus Family requests an order prohibiting the enforcement of portions of the September 2013 tolling order and an order vacating the order to the extent that it applies to Claugus Family as an unnamed class member. Beck Energy, on the other hand, claims that Claugus Family breached its lease by entering into the Gulfport lease because the Beck Energy lease prohibited the lessor from entering into any other oil and gas lease while the lease was in effect.

{¶ 18} On September 3, 2014, we granted an alternative writ and scheduled submission of evidence and briefing in the original action. 140 Ohio St.3d 1409, 2014-Ohio-3785, 15 N.E.3d 879. On February 3, 2015, we consolidated the original action and the appeal for oral argument and decision. 141 Ohio St.3d 1461, 2015-Ohio-370, 24 N.E.3d 1180.

*Analysis*

*Hustack v. Beck Energy Corp.,* **case No. 2014-1933—the appeal**

{¶ 19} The landowners challenge two holdings of the Seventh District Court of Appeals regarding the Form G&T (83) leases. In their first proposition of law, the landowners assert that the Form G&T (83) lease can be maintained indefinitely without developing the land and is therefore a perpetual lease that is void as against public policy. In the second proposition of law, the landowners challenge the Seventh District's refusal to hold that the lease was subject to an implied covenant of reasonable development. For the following reasons, we affirm the judgment of the Seventh District.

**Is the Form G&T (83) oil and gas lease void as against public policy?**

{¶ 20} As we have recently stated, the language of a granting clause determines the nature of an oil and gas lease and its effect on the parties' property

6

interest in the oil and gas. *Chesapeake Exploration, L.L.C. v. Buell*, ___ Ohio St.3d ___, 2015-Ohio-4551, ___N.E.3d ___, ¶ 48. An oil and gas lease typically includes a primary term, which sets forth the duration of the lease, and a secondary term, which allows the lease to be extended under certain described conditions. *Id.* at ¶ 77. If the conditions of the secondary term are not met, " 'the lease terminates by the express terms of the contract * * * and by operation of law and revests the leased estate in the lessor.' " *Id.*, quoting *Am. Energy Servs., Inc. v. Lekan*, 75 Ohio App.3d 205, 212, 598 N.E.2d 1315 (5th Dist.1992).

**{¶ 21}** Long-term leases of mineral rights under which there is no development of the land are void as against public policy. *Ionno v. Glen-Gery Corp.*, 2 Ohio St.3d 131, 134, 443 N.E.2d 504 (1983). When a lease does not require development within a definite period, a court will impose an implied covenant to reasonably develop, absent express provisions to the contrary. *Id*. at 132-133.

**{¶ 22}** The mineral lease in *Ionno* contained no time period in which mining operations had to commence, and the mining company had paid advance royalties for 19 years without developing the land. We stated that paying royalties could not be viewed "as a substitute for timely development" of the land. *Id.* at 134. We concluded, "To hold otherwise would be to reward mere speculation without development [and] would allow a lessee to encumber a lessor's property in perpetuity merely by paying an annual sum." *Id.*

**{¶ 23}** The Form G&T (83) lease states as follows:

> 2. This lease shall continue in force and the rights granted hereunder be quietly enjoyed by the Lessee for a term of ten years and so much longer thereafter as oil and gas or their constituents are produced or are capable of being produced on the premises in paying quantities, in the judgment of the Lessee, or as the premises shall be

> operated by the Lessee in the search for oil or gas and as provided
> in paragraph 7 following.

The Form G&T (83) lease required Beck Energy to commence a well on the leased premises within a certain time or pay a certain delay rental to the landowners, which the parties agreed was to be 12 months and $1 to $5 an acre per year, respectively.

> 3. This lease, however, shall become null and void and all
> rights of either party hereunder shall cease and terminate unless,
> within ___ months from the date hereof, a well shall be commenced
> on the premises, or unless the Lessee shall thereafter pay a delay
> rental of ___ Dollars each year, payments to be made quarterly until
> the commencement of a well. A well shall be deemed commenced
> when preparations for drilling have been commenced.

**{¶ 24}** The landowners argue that the Form G&T (83) lease does not state that development must commence during the primary term and thus that it is a perpetual lease similar to the one in *Ionno*. The landowners note that the lease does not use the words "primary term" or "secondary term." They argue that after the initial ten years, Beck Energy could extend the lease even if it had not developed for oil and gas, by subjectively determining that oil or gas could be produced in paying quantities and then continuing to pay delay rentals. While the language in the Form G&T (83) lease is not identical to leases in the case law, it is similar enough to justify its application here.

**{¶ 25}** Delay-rental provisions have been interpreted to apply only during the primary term of a lease. In *Brown v. Fowler*, 65 Ohio St. 507, 63 N.E. 76 (1902), the lease stated that the lessees held the land for 2 years and as long thereafter as oil or gas was found in paying quantities not exceeding 25 years from

the date that the lease was signed. The lease also stated that if no well was drilled within 12 months, the lease terminated unless delay rentals were paid. This court held that payment of the delay rental could not extend the lease beyond the fixed term of 2 years. *Id*. at 522. *Accord Jacobs v. CNG Transm. Corp.*, 332 F.Supp.2d 759, 786 (W.D.Pa.2004) (provision obligating the lessee to pay rental or develop the leasehold is understood to be operative only during the primary term).

{¶ 26} Thus, under paragraphs 2 and 3 of the Form G&T (83) lease, the delay rental must be paid beginning one year after the lease is signed if no well is commenced in that year and payments may continue only until the tenth year of the lease.

{¶ 27} The phrase "capable of being produced," which is used in the provision under which the duration of the lease can be extended, does not extend the time during which the delay rentals can be paid. Courts that have addressed similar language have done so only when referring to whether a *well*, rather than *undeveloped land*, is capable of producing. *Morrison v. Petro Evaluation Servs., Inc.*, 5th Dist. Morrow No. 2004 CA 0004, 2005-Ohio-5640, ¶ 39-40; *Anadarko Petroleum Corp. v. Thompson*, 94 S.W.3d 550, 558 (Tex.2003); *Hunthauser Holdings, L.L.C. v. Loesch*, D.Kan. No. Civ.A. 00-1154-MLB, 2003 WL 21981961 (June 10, 2003). And Beck Energy acknowledges that oil and gas are not "capable of being produced" if no well exists.

{¶ 28} Nor does the phrase "in the judgment of Lessee" permit the lease to continue indefinitely at Beck Energy's discretion without development of oil and gas. That phrase also applies to production from a well, not to the possibility of production from the land. Beck Energy, although it asserts that "paying quantities" are properly viewed from the lessee's perspective, also agrees that the phrase refers to its judgment regarding the capability to produce once a well has been drilled.

{¶ 29} The landowners also argue that paragraphs 7 and 8 of the lease allow the "indefinite extension of the Lease without any drilling." But neither paragraph

is applicable unless drilling has occurred. Paragraph 7 states that the lease terminates after the plugging of a well that is dry, unless Beck drills another well within a year or resumes paying delay rentals at the end of that year. Paragraph 8 addresses a producing well that stops producing or whose products cannot be marketed. Because delay rentals can be paid only during the first ten years of the lease, the lease cannot be extended indefinitely.

{¶ 30} For all these reasons, we conclude that the Form G&T (83) lease cannot be extended beyond the ten years set forth in the primary term without development of oil or gas. The lease is not void as against public policy.

**Is the Form G&T (83) oil and gas lease subject to an implied covenant of reasonable development?**

{¶ 31} Courts have sometimes imposed upon the parties to oil and gas leases an implied covenant to develop in a reasonable period of time, but only when the lease fails to refer specifically to the timeliness of development. We will not impose an implied covenant to develop when the lease requires that development must commence within a certain period or when the lease specifies that no implied covenant shall be read into the agreement. *Ionno*, 2 Ohio St.3d at 132, 443 N.E.2d 504 (implied covenant to reasonably develop the land imposed in lease); *Beer v. Griffith*, 61 Ohio St.2d 119, 399 N.E.2d 1227 (1980), paragraph two of the syllabus ("Absent express provisions to the contrary, an oil and gas lease includes an implied covenant to reasonably develop the land"); *Harris v. Ohio Oil Co.*, 57 Ohio St. 118, 128, 48 N.E. 502 (1897) ("The implied covenant [of reasonable development] arises only when the lease is silent on the subject").

{¶ 32} The Form G&T (83) lease at issue here requires that development commence within ten years, and thus it is not a lease in perpetuity like the lease at issue in *Ionno*. In addition, there is specific language in the lease that disclaims any implied covenants.

**{¶ 33}** For these reasons, we hold that the Seventh District correctly held that the leases preclude the imposition of an implied covenant to develop within the primary term of the lease.

***State ex rel. Claugus Family Farm, L.P. v. Seventh Dist. Court of Appeals*, case No. 2014-0423—the original action**

**{¶ 34}** In the original action, Claugus Family seeks a writ of prohibition to permanently enjoin the Seventh District from enforcing its order tolling the leases as to Claugus Family and a writ of mandamus directing the Seventh District to vacate the tolling order as to Claugus Family.

**{¶ 35}** To be entitled to a writ of prohibition, Claugus Family must establish that (1) the court of appeals is about to exercise or has exercised judicial power, (2) the exercise of that power is unauthorized by law, and (3) denying the writ would result in injury for which no other adequate remedy exists in the ordinary course of law. *State ex rel. Bell v. Pfeiffer*, 131 Ohio St.3d 114, 2012-Ohio-54, 961 N.E.2d 181, ¶ 18. Even if Claugus Family has an adequate remedy in the ordinary course of law, it may be entitled to a writ if the court of appeals "patently and unambiguously" lacked jurisdiction. *Chesapeake Exploration, L.L.C. v. Oil & Gas Comm.*, 135 Ohio St.3d 204, 2013-Ohio-224, 985 N.E.2d 480, ¶ 11.

**{¶ 36}** Similarly, to be entitled to extraordinary relief in mandamus, Claugus Family must establish a clear legal right to the requested relief, a clear legal duty on the part of the court of appeals to provide it, and the lack of an adequate remedy in the ordinary course of law. *State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6. Claugus Family must prove that it is entitled to the writ by clear and convincing evidence. *Id.* at ¶ 13.

**{¶ 37}** We conclude that Claugus Family is not entitled to a writ of mandamus or of prohibition. First, it had an adequate remedy in the ordinary course of law by moving to intervene in the appeal. *State ex rel. Denton v. Bedinghaus*, 98 Ohio St.3d 298, 2003-Ohio-861, 784 N.E.2d 99, ¶ 28 (intervention in an action

against a child-support obligor was an adequate remedy in the ordinary course of law for a bailor seeking release of funds that had been confiscated by a court to pay the obligor's child-support arrearages); *State ex rel. Gaydosh v. Twinsburg*, 93 Ohio St.3d 576, 578, 757 N.E.2d 357 (2001) (intervention in a declaratory-judgment action is an adequate remedy in the ordinary course of law that precludes the issuance of a writ of mandamus); *State ex rel. Bennett v. Lime*, 55 Ohio St.2d 62, 63, 378 N.E.2d 152 (1978) (court may deny a writ of mandamus when parties could have intervened in a previously filed declaratory-judgment action).

**{¶ 38}** The Seventh District issued the tolling order in the appeal on September 26, 2013. Claugus Family admitted that its counsel found out about the order sometime in October 2013. The Seventh District did not issue its decision on the merits of the appeal until September 26, 2014. Claugus Family could have moved to intervene in the appeal when it learned of the tolling order or in the next 11 months. Claugus Family thus had an adequate remedy in the ordinary course of law.

**{¶ 39}** Second, the Seventh District had jurisdiction to issue an order to maintain the status quo during the course of the appeal, and the tolling order did that. Indeed, Claugus Family does not argue that the Seventh District lacked jurisdiction to issue the order, let alone that it patently and unambiguously lacked such jurisdiction.

**{¶ 40}** For these reasons, we deny both writs.

**Motion for a tolling order**

**{¶ 41}** Finally, Beck Energy has filed a motion in each case to toll the terms of the Form G&T (83) leases as to all members of the class. Having held that the leases are valid, we deny the motions for a tolling order.

*Conclusion*

{¶ 42} Because the Form G&T (83) lease sets forth a definite period during which development must occur, we affirm the judgment of the Seventh District Court of Appeals in case No. 2014-1933.

{¶ 43} We deny writs of mandamus and prohibition in case No. 2014-0423 because Claugus Family had an adequate remedy in the ordinary course of law by moving to intervene in the appeal and because the court of appeals did not patently and unambiguously lack jurisdiction to issue an order tolling the leases.

{¶ 44} Finally, we deny Beck Energy's motions to toll the terms of the leases.

Writs and motions denied<br>and judgment affirmed.

O'CONNOR, C.J., and LANZINGER, KENNEDY, and O'NEILL, JJ., concur.

PFEIFER and O'DONNELL, JJ., concur in part and dissent in part.

_____

**PFEIFER, J., concurring in part and dissenting in part.**

{¶ 45} I concur in the portion of the majority opinion that addresses the validity of the leases. They are not perpetual. I dissent from everything else. Over the years, I have been generous with criticism of various legal analyses of my colleagues; spirited dissent is a well-understood, constructive part of deciding important matters in a court of last resort. I have been more circumspect with respect to our trial courts, which often have to render quick decisions on complex matters without the benefit of colleagues to help them thread the various legal needles. Today I take aim below as well.

{¶ 46} This case is an all-too-real modern *Jarndyce and Jarndyce*. The attorney for Claugus Family Farm, L.P. ("Claugus") ably and successfully argued before this court that the Beck Energy leases were valid. He did so while sitting at the same table as an attorney who argued that the Beck Energy leases were

perpetual and therefore invalid. Meanwhile, Beck Energy's attorney argued that Claugus's interests, as an unnamed class member, were skillfully and properly represented by the Hupps' attorney, who was arguing directly contrary to Claugus's expressed interests. Because a class was certified and the leases tolled, Claugus estimates that it will lose hundreds of thousands of dollars based on losing the lease it negotiated with Gulfport. We have no way of knowing the total extent of the economic carnage wrought on the 700 or so other landowners in Monroe County and elsewhere in southeastern Ohio that are affected by this decision. The ultimate irony, which you might think would only happen in a fictional case, is that the Hupps, the lead plaintiffs in the class-action case, are no longer party to the suit. It's as if the Hupps' attorney, whose ridiculous argument that the leases were perpetual, made the argument just so he could initiate a Civ.R. 23(B)(2) suit, thereby adding significant numbers to his oil and gas client base. It is as if the Hupps and Beck Energy were part of a scheme to extend the Beck leases by subterfuge—by making a specious argument about the validity of the leases and tolling them—instead of extending the leases the old-fashioned way, by working the land that is the subject of the leases. Beck Energy becomes the undisputed winner of this case, whether by hook or by crook, because it assigned the disputed leases to XTO Energy for $84 million. Claugus and other unnamed parties seeking relief from this court were told below that they should have intervened in the Seventh District—and that remains the best option they have—to have intervened when they did not have notice. It is laughable. *Jarndyce* indeed.

{¶ 47} "Unorthodox" does not adequately describe what happened in the courts below. The trial court certified the class after deciding, on summary judgment, that the Beck Energy leases were invalid. Not to be outdone, on September 26, 2013, the court of appeals, instead of decertifying the class as requested by Beck Energy, tolled all Beck Energy leases for both the named and unnamed plaintiffs as of October 1, 2012. This reversed the trial court, which

14

though it unreasonably certified the class, at least had the sense to realize that parties with notice of the suit should be treated differently from those without notice. The court of appeals then ruled in *Hupp v. Beck Energy Corp.*, 2014-Ohio-4255, 20 N.E.3d 732, ¶ 76 (7th Dist.), determining that the Beck Energy leases are not perpetual, but nevertheless continued the tolling for both named and unnamed plaintiffs until such date as this court accepted jurisdiction. It is as if everyone associated with this case is determined to extend the leases for the benefit of Beck Energy and to the detriment of Claugus.

**{¶ 48}** Moreover, the requirements of Civ.R. 23 on joinder are not met. The class is not so large that joinder of all parties is impracticable. The questions of law are not common to all parties. At least one party, Claugus, believed its lease with Beck Energy was valid and was prepared to abide by its terms. As noted above, the class argued before this court that the Beck Energy leases were perpetual and, therefore, invalid. How can the class properly protect Claugus and other unnamed, unnotified parties who may believe in the validity of their own leases? Given that, how can the class be certified? This opposing point of view by unnamed proposed plaintiffs, who lacked notice, means that Civ.R. 23(A)(2), (3), and (4) could not possibly be met. Unfortunately, the trial court did not even inquire into this issue. Furthermore, it is clear that the certification of the class resulted in the denial of due process to Claugus (no notice and no opportunity to opt out) and adversely affected the property and contract rights of Claugus and other similarly situated unnamed class members. On this basis alone, this court should grant the writs and relief sought by Claugus.

**{¶ 49}** A postscript in keeping with the trials and tribulations of *Jarndyce and Jarndyce*. When the attorney for the named, but no longer present, plaintiffs filed this action in September 2011, West Texas Intermediate oil was $85.62 per barrel. When tolling began in October 2012, the price was $89.52; when the trial court granted class certification, it was $95.30; when the Seventh District issued

the tolling order in September 2013, it was $106.31; in September 2014, when the Seventh District decided the *Hupp* case, oil was at $93.35; when this court accepted jurisdiction of the appeal in January 2015, oil stood at $47.60; and today as we decide this case, the price is hovering below $30 per barrel. *See* http://www.indexmundi.com/commodities/?commodity=crude-oil-west-texas-intermediate&months=120 (accessed Jan. 19, 2016). Natural gas prices have also crashed during the course of this litigation. *See* http://www.indexmundi.com/commodities/?commodity=natural-gas&months=120 (accessed Jan. 19, 2016). Although the true cost of production for eastern Ohio shale oil and gas is unknowable by this court, it is generally regarded to be significantly above current market prices.

{¶ 50} Who are the winners in this case? As noted, the undisputed winner is Beck Energy, which presciently unloaded its leases to XTO Energy for $89 million at a time when prices were significantly higher than they are now. It is possible that XTO Energy will be able to develop some of the leased properties, whether to block competitors or because of proximity to previously installed pipelines. For many of the unnamed class plaintiffs, the future is cloudy at best, though a winning scenario is difficult to imagine. We know that none of them will be able, based on today's market prices, to lease their property to Gulfport or other oil and gas producers for the $7,000 per acre that Claugus had negotiated. And we know that they won't be able to do that because of a specious argument made by a lawyer in Akron, Ohio, who took a swing for the bleachers on behalf of over 700 property owners without their knowledge or consent.

{¶ 51} We all have regrets, usually because of something we did wrong, something we could and should have done differently. In this case, the landowner families affected regret that the courts of Ohio did not protect them from the machinations of a lawyer who did not even represent them. They will drink their

morning coffee, dreaming of what might have been, of what this court could and should have done.

O'DONNELL, J., concurs in the foregoing opinion.

————————————

Critchfield, Critchfield & Johnston, Ltd., Daniel H. Plumly, and Andrew P. Lycans, for relator in case No. 2014-0423.

Michael DeWine, Attorney General, and Sarah Pierce and Tiffany Carwile, Assistant Attorneys General, for respondents in case No. 2014-0423.

Slater & Zurz, L.L.P., Richard V. Zurz Jr., and Mark A. Ropchock, for appellants in case No. 2014-1933.

Krugliak, Wilkins, Griffiths & Dougherty Co., L.P.A., Scott M. Zurakowski, William G. Williams, Gregory W. Watts, and Aletha M. Carver, for appellee in case No. 2014-1933 and intervening respondent in case No. 2014-0423.

Reed Smith, L.L.P., and Kevin C. Abbott; and Brouse McDowell, L.P.A., and Clair E. Dickinson, in support of respondents in case No. 2014-0423 and urging affirmance in case No. 2014-1933 for amicus curiae XTO Energy, Inc.

Vorys, Sater, Seymour & Pease, L.L.P., John K. Keller, and Timothy B. McGranor in support of respondents in case No. 2014-0423 and urging affirmance in case No. 2014-1933 for amici curiae Ohio Oil and Gas Association, Enervest, Ltd., Artex Oil Company, Artex Energz Group, L.L.C., Sierra Buckeye, L.L.C., Eclipse Resources Corporation, and Hilcorp Energy Company.

Burleson, L.L.P., Kevin L. Colosimo, Kristin M. McCormish, Michael Vennum, and Daniel P. Craig, in support of intervening respondent in case No. 2014-0423.

————————————