[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Lutz v. Chesapeake Appalachia, L.L.C.*, Slip Opinion No. 2016-Ohio-7549.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-7549

LUTZ ET AL. v. CHESAPEAKE APPALACHIA, L.L.C.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Lutz v. Chesapeake Appalachia, L.L.C.*, Slip Opinion No. 2016-Ohio-7549.]

*Certified question of state law—Cause dismissed.*

(No. 2015-0545—Submitted January 5, 2016—Decided November 2, 2016.)

ON ORDER from the United States District Court for the Northern District of Ohio, Eastern Division, Certifying a Question of State Law, No. 4:09-cv-2256.

_____

KENNEDY, J.

I. Introduction

{¶ 1} The United States District Court for the Northern District of Ohio, Eastern Division, has certified the following question to this court pursuant to S.Ct.Prac.R. 9.01: "Does Ohio follow the 'at the well' rule (which permits the deduction of post-production costs) or does it follow some version of the

'marketable product' rule (which limits the deduction of post-production costs under certain circumstances)?"

{¶ 2} Under Ohio law, an oil and gas lease is a contract that is subject to the traditional rules of contract construction. Because the rights and remedies of the parties are controlled by the specific language of their lease agreement, we decline to answer the question of law submitted by the United States District Court for the Northern District of Ohio, Eastern Division and dismiss the cause.

## II. Facts and Procedural History

{¶ 3} The action in the federal court is a putative class action in which respondents here, Regis and Marion Lutz, Leonard Yochman, Joseph Yochman, and C.Y.Y., L.L.C., the landowner-lessors, claim that petitioner, Chesapeake Appalachia, L.L.C., the lessee, underpaid gas royalties under the terms of their leases. The leases in this case were signed in 1970 and 1971. Both petitioner and respondents agree that by the early 1990s, deregulation had significantly changed the natural-gas market.

{¶ 4} It is undisputed that under each lease, the lessee must bear all the production costs, i.e., the costs of producing the gas from below the ground and bringing it to the wellhead. The dispute centers on postproduction costs, i.e., the costs incurred after the gas is produced at the wellhead and before it is sold. Those postproduction costs may include, among other costs, the cost of gathering the gas

from various wells, the cost to process and compress the gas, and the cost of transporting the gas to the point of sale.

{¶ 5} In its certification order to this court, the federal court set out the royalty clauses found in the leases:

[1] The royalties to be paid by Lessee are * * * (b) on gas, including casinghead gas or other gaseous substance, produced and sold or used off the premises or for the extraction of gasoline or other product therefrom, the market value at the well of one-eighth of the gas so sold or used, provided that on gas sold at the wells the royalty shall be one-eighth of the amount realized from such sale.

[2] Lessee [sic, Lessor] to receive the field market price per thousand cubic feet for one-eighth (1/8) of all gas marketed from the premises.

[3] Lessee covenants and agreed to deliver to the credit of the Lessor, as royalty, free of cost, in the pipeline to which the wells drilled by the Lessee may be connected the equal one-eighth part of all Oil and/or Gas produced and saved from said leased premises.

{¶ 6} At issue is whether the lessee is permitted to deduct postproduction costs from the lessors' royalties, and, if so, how those costs are to be calculated.

{¶ 7} The lessors assert that under the language of the leases, which specifies that royalties are to be paid based on "market value at the well" or the "field market price," postproduction costs should not be deducted from the sale price before the royalty payments are calculated. The lessors argue that because

there is no market at the well, the lessee has an implied duty to market the product once it is severed from the wellhead, and the lessee must bear the cost of bringing the product to the market.

{¶ 8} The lessee asserts that the plain language of a lease controls and that when a lease specifies that the owner's royalty is based on the value of the product at the well, any postproduction costs must be deducted from the sale price to arrive at the well price before the agreed-upon royalty can be calculated. The lessee also disputes the factual veracity and relevance of the lessors' contention that there is no market at the well. The lessee argues that regardless of where the gas is sold, the lease language provides for royalty payments based on the value of gas at the well.

### III. Law and Analysis

{¶ 9} In Ohio, oil and gas leases are contracts. *Harris v. Ohio Oil Co.*, 57 Ohio St. 118, 129, 48 N.E. 502 (1897). "The rights and remedies of the parties to an oil or gas lease must be determined by the terms of the written instrument * * *." *Id. Accord Chesapeake Exploration, L.L.C. v. Buell*, 144 Ohio St.3d 490, 2015-Ohio-4551, 45 N.E.3d 185, ¶ 53. It is a well-known and established principle of contract interpretation that "[c]ontracts are to be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language." *Skivolocki v. E. Ohio Gas Co.*, 38 Ohio St.2d 244, 313 N.E.2d 374 (1974), paragraph one of the syllabus. "Extrinsic evidence is admissible to ascertain the

intent of the parties when the contract is unclear or ambiguous, or when circumstances surrounding the agreement give the plain language special meaning." *Graham v. Drydock Coal Co.*, 76 Ohio St.3d 311, 313-314, 667 N.E.2d 949 (1996). This is particularly true "when circumstances surrounding an agreement invest the language of the contract with a special meaning, [because] extrinsic evidence can be considered in an effort to give effect to the parties' intention." *Martin Marietta Magnesia Specialties, L.L.C. v. Pub. Util. Comm.*, 129 Ohio St.3d 485, 2011-Ohio-4189, 954 N.E.2d 104, ¶ 29. Extrinsic evidence can include "(1) the circumstances surrounding the parties at the time the contract was made, (2) the objectives the parties intended to accomplish by entering into the contract, and (3) any acts by the parties that demonstrate the construction they gave to their agreement." *United States Fid. & Guar. Co. v. St. Elizabeth Med. Ctr.*, 129 Ohio App.3d 45, 56, 716 N.E.2d 1201 (2nd Dist.1998).

{¶ 10} The certified question asks us to declare, based on the language of the three different royalty clauses in the five leases before us, whether Ohio law imposes the "at-the-well" rule or the "marketable product" rule. The leases at issue were negotiated and signed prior to the culmination of deregulation of the natural gas marketplace by the Federal Energy Regulatory Commission in 1992. *See* Pipeline Serviced Obligations and Revisions to Regulations Governing Self-Implementing Transportation under Part 284 of the Commission's Regulations, 57 Fed.Reg. 13,267-02 (1992). The contractual relationship between the lessor and

the lessee spans more than four decades.  If the language of the leases is ambiguous, we cannot give effect to the parties' intent, because we do not have extrinsic evidence. If the language of the leases is not ambiguous, then the federal court should be able to interpret the leases without our assistance.

## IV. Conclusion

{¶ 11} Under Ohio law, an oil and gas lease is a contract that is subject to the traditional rules of contract construction.  Because the rights and remedies of the parties are controlled by the specific language of their lease agreement, we decline to answer the certified question and dismiss this cause.

Cause dismissed.

O'CONNOR, C.J., and O'DONNELL, LANZINGER, and FRENCH, JJ., concur.

PFEIFER, J., dissents, with an opinion.

O'NEILL, J., dissents, with an opinion.

_____

**PFEIFER, J., dissenting.**

{¶ 12} We have been asked whether Ohio follows the "at the well" rule (which permits the deduction of postproduction costs) or the "marketable product" rule (which limits the deduction of postproduction costs under certain circumstances) in the calculation of royalties under an oil and gas lease.  I would answer the question certified by the federal court, and I would state that Ohio follows the marketable-product rule.

**{¶ 13}** The marketable-product rule appropriately gives lessors the benefit of the bargain they sought in the leases at issue here—one eighth of the value of the material pulled from the land. Three significant factors influence my answer: the complete control that lessees have over postproduction costs, the ease with which these costs could be manipulated, and the fact that, in most instances, the lessee drafts the lease document.

**{¶ 14}** Because there is no longer a market at the wellhead, the amount due a lessor should be based on the price at the first discernible market downstream. Adopting this rule would, of course, result in all future leases being more finely crafted to incorporate postproduction costs—all the better. In the meantime, lessors would not be forced to pay for a share of postproduction costs unless specifically required to do so by the lease.

**{¶ 15}** I would adopt the marketable-product rule. I dissent.

————————————

**O'NEILL, J., dissenting.**

**{¶ 16}** The United States District Court for the Northern District of Ohio, Eastern Division, has certified the following question to this court: "Does Ohio follow the 'at the well' rule (which permits the deduction of post-production costs) or does it follow some version of the 'marketable product' rule (which limits the deduction of post-production costs under certain circumstances)?" On June 03, 2015, this court agreed to answer the question. 142 Ohio St.3d 1474, 2015-Ohio-

2104, 31 N.E.3d 653. I disagree with the majority's decision to decertify the question. In response to the federal court's question, I would hold that in Ohio, the "rights and remedies of the parties to an oil or gas lease must be determined by the terms of the written instrument." *Chesapeake Exploration, L.L.C. v. Buell*, 144 Ohio St.3d 490, 2015-Ohio-4551, 45 N.E.3d 185, ¶ 53. Where a lease provides that the lessor's royalty is based on value at the well, Ohio follows the "at the well" rule. I would further hold that "at-the-well," under Ohio law, is defined as the gross proceeds of a sale minus postproduction costs.

{¶ 17} The at-the-well rule is premised on the understanding that production is complete, for purposes of calculating royalties, when the lessee captures the product and it is held at the wellhead. 3A Saint-Paul, *Summers Oil and Gas*, Section 33.2, at 141 (3d Ed.2008); *see also Piney Woods Country Life School v. Shell Oil Co.*, 726 F.2d 225, 242 (5th Cir.1984) ("market value at the well" means market value before processing and transportation). Thus, in jurisdictions following the at-the-well rule, "at the well" lease language refers to the location as well as the quality of the gas for calculating a royalty, regardless of where the lessee sells the gas. *Piney Woods Country Life School* at 231; *Schroeder v. Terra Energy, Ltd.*, 223 Mich.App. 176, 187, 565 N.W.2d 887 (1997) (" 'At the well' refers to proceeds minus refining and transportation costs, as opposed to proceeds at the point of sale, where refining and transportation costs are not deducted"); *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d

8

235, 244 (6th Cir.2011) ("at the well" refers to gas in its natural and unprocessed state, and a lessee is entitled to deduct the costs of processing and transportation from the lessor's royalty payment); *Sternberger v. Marathon Oil Co.*, 257 Kan. 315, 322, 894 P.2d 788 (1995) ("The lease's silence on the issue of postproduction deductions does not make the lease ambiguous. The lease clearly specifies that royalties are to be paid based on 'market price at the well' ").

**{¶ 18}** Conversely, under the marketable-product rule, production is not considered complete until the lessee has made the product marketable. 3A Saint-Paul, Section 33.3, at 146-147. The legal principle here is that in addition to the express terms of the lease, there are covenants or duties that are attendant to all oil and gas leases, one of which is the lessee's implied covenant to market the product. *See* 2 Brown, Brown & Gillaspia, *The Law of Oil and Gas Leases*, Section 16.01 and 16.02, at 16-5 to 16-7 (2d Ed.2016). The duty on the lessee to make the product marketable does not arise from the express terms of the lease but from the implied covenant to market the product. *Wellman v. Energy Res., Inc.*, 210 W.Va. 200, 210, 557 S.E. 2d 254 (2001).

**{¶ 19}** My view is that application of the marketable-product rule runs the risk of giving the lessor the benefit of a bargain not made. As a Michigan appellate court has observed, interpreting at-the-well language to refer to gross proceeds at the market requires the lessee to pay royalties

not only on the value of the gas at the wellhead, but also upon the costs that [the lessee] has incurred to prepare the gas for, and transport the gas to, market. Thus [the lessors'] royalties would be increased merely as a function of [the lessee's] own efforts to enhance the value of the gas through postproduction investments that it has exclusively underwritten.

*Schroeder* at 189.

**{¶ 20}** Although this court has not directly addressed whether an implied covenant to market applies to oil and gas leases, this court has addressed the imposition of an implied covenant of reasonable development. *State ex rel. Claugus Family Farm, L.P. v. Seventh Dist. Court of Appeals*, 145 Ohio St.3d 180, 2016-Ohio-178, 47 N.E.3d 836, ¶ 31-33. We concluded that an implied covenant of reasonable development arises only when the lease is silent on the subject. *Id.* at ¶ 31, citing *Harris v. Ohio Oil Co.*, 57 Ohio St. 118, 128, 48 N.E. 502 (1807). In *Claugus*, the lease included a provision requiring development to commence within ten years and specific language disclaiming the use of implied covenants. *Id.* at ¶ 32. Accordingly, this court declined to impose an implied covenant to develop the land. *Id. See also Kachelmacher v. Laird*, 92 Ohio St. 324, 110 N.E. 933 (1915), paragraph one of the syllabus ("There can be no implied covenants in a contract in relation to any matter that is covered by the written terms of the contract itself"). When a contract specifies an agreed point at which royalties are valued, implied duties should not be applied to alter that agreement.

**{¶ 21}** Naturally, as the multiple lease provisions presented in this case demonstrate, the language of leases may differ, and the law applicable to one form of lease may not be applicable to another form of lease. *Harris* at 129. That fact notwithstanding, I would answer the question posed by the federal court. Pursuant to existing Ohio law, the parties' rights and remedies must be determined by the terms of the lease. *Chesapeake Exploration, L.L.C.*, 144 Ohio St.3d 490, 2015-Ohio-4551, 45 N.E.3d 185, ¶ 53. When a lease provides that the lessor's royalty is based on value at the well, Ohio follows the at-the-well rule. I would further hold that "at the well," under Ohio law, is defined as the gross proceeds of a sale minus postproduction costs.

**{¶ 22}** I respectfully dissent.

_____

Kirkland & Ellis L.L.P. and Daniel T. Donovan; Vorys, Sater, Seymour & Pease, L.L.P., and John K. Keller; and Reed Smith, L.L.P., Kevin C. Abbott, and Nicolle R. Snyder Bagnell, for petitioner.

Lowe, Eklund, & Wakefield Co., L.P.A., and James A. Lowe; Law Office of Robert C. Sanders and Robert Sanders, for respondents.

Lija Kaleps-Clark, in support of petitioner for amici curiae Ohio Oil and Gas Association, Artex Oil Company, Eclipse Resources I, L.P., Enervest Operating, L.L.C., NGO Development Corporation, Inc., Rex Energy Corporation, and Sierra Resources, L.L.C.

Porter, Wright, Morris & Arthur, L.L.P., L. Bradford Hughes, and Christopher J. Baronzzi; and Matthew A. Haynie, in support of petitioner for amicus curiae American Petroleum Institute.

McGinnis, Lochridge & Kilgore and Bruce M. Kramer, in support of petitioner for amicus curiae Bruce M. Kramer.

Krugliak, Wilkins, Griffiths & Dougherty Co., L.P.A., William J. Williams, Scott M. Zunakowski, Gregory W. Watts, and Aletha M. Carver, in support of neither side for amici curiae Sam Johnson, Zehentbauer Family Land, L.P., Hanover Farms, L.P., and Bounty Minerals, L.L.C.

_____