O’Neill, J.,
dissenting.
{¶ 16} The United States District Court for the Northern District of Ohio, Eastern Division, has certified the following question to this court: “Does Ohio follow the ‘at the well’ rule (which permits the deduction of post-production costs) or does it follow some version of the ‘marketable product’ rule (which limits the deduction of post-production costs under certain circumstances)?” On June 3, 2015, this court agreed to answer the question. 142 Ohio St.3d 1474, 2015-Ohio-2104, 31 N.E.3d 653. I disagree with the majority’s decision to decline to answer the question and dismiss the case. In response to the federal court’s question, I would hold that in Ohio, the “rights and remedies of the parties to an oil or gas lease must be determined by the terms of the written instrument.” Chesapeake Exploration, L.L.C. v. Buell, 144 Ohio St.3d 490, 2015-Ohio-4551, 45 N.E.3d 185, ¶ 53. Where a lease provides that the lessor’s royalty is based on value at the well, Ohio follows the “at the well” rule. I would further hold that “at-the-well,” under Ohio law, is defined as the gross proceeds of a sale minus postproduction costs.
{¶ 17} The at-the-well rule is premised on the understanding that production is complete, for purposes of calculating royalties, when the lessee captures the product and it is held at the wellhead. 3A Saint-Paul, Summers Oil and Gas, Section 33.2, at 141 (3d Ed.2008); see also Piney Woods Country Life School v. Shell Oil Co., 726 F.2d 225, 242 (5th Cir.1984) (“market value at the well” means market value before processing and transportation). Thus, in jurisdictions following the at-the-well rule, “at the well” lease language refers to the location as well as the quality of the gas for calculating a royalty, regardless of where the lessee sells the gas. Piney Woods Country Life School at 231; Schroeder v. Terra Energy, Ltd., 223 Mich.App. 176, 187, 565 N.W.2d 887 (1997) (“ ‘At the well’ refers to proceeds minus refining and transportation costs, as opposed to proceeds at the point of sale, where refining and transportation costs are not deducted”); Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C., 636 F.3d 235, 244 (6th Cir.2011) (“at the well” refers to gas in its natural and unprocessed state, and a lessee is entitled to deduct the costs of processing and transportation from the lessor’s royalty payment); Sternberger v. Marathon Oil Co., 257 Kan. 315, 322, 894 P.2d 788 (1995) (“The lease’s silence on the issue of postproduction *529 deductions does not make the lease ambiguous. The lease clearly specifies that royalties are to be paid based on ‘market price at the well’ ”).
{¶ 18} Conversely, under the marketable-product rule, production is not considered complete until the lessee has made the product marketable. 3A Summers Oil and Gas, Section 33.3, at 146-147. The legal principle here is that in addition to the express terms of the lease, there are covenants or duties that are attendant to all oil and gas leases, one of which is the lessee’s implied covenant to market the product. See 2 Brown, Brown & Gillaspia, The Law of Oil and Gas Leases, Section 16.01 and 16.02, at 16-5 to 16-7 (2d Ed.2016). The duty on the lessee to make the product marketable does not arise from the express terms of the lease but from the implied covenant to market the product. Wellman v. Energy Res., Inc., 210 W.Va. 200, 210, 557 S.E.2d 254 (2001).
{¶ 19} My view is that application of the marketable-product rule runs the risk of giving the lessor the benefit of a bargain not made. As a Michigan appellate court has observed, interpreting at-the-well language to refer to gross proceeds at the market requires the lessee to pay royalties
not only on the value of the gas at the wellhead, but also upon the costs that [the lessee] has incurred to prepare the gas for, and transport the gas to, market. Thus [the lessors’] royalties would be increased merely as a function of [the lessee’s] own efforts to enhance the value of the gas through postproduction investments that it has exclusively underwritten.
Schroeder at 189.
{¶20} Although this court has not directly addressed whether an implied covenant to market applies to oil and gas leases, this court has addressed the imposition of an implied covenant of reasonable development. State ex rel. Claugus Family Farm, L.P. v. Seventh Dist. Court of Appeals, 145 Ohio St.3d 180, 2016-Ohio-178, 47 N.E.3d 836, ¶ 31-33. We concluded that an implied covenant of reasonable development arises only when the lease is silent on the subject. Id. at ¶ 31, citing Harris v. Ohio Oil Co., 57 Ohio St. 118, 128, 48 N.E. 502 (1897). In Claugus, the lease included a provision requiring development to commence within ten years and specific language disclaiming the use of implied covenants. Id. at ¶ 32. Accordingly, this court declined to impose an implied covenant to develop the land. Id. See also Kachelmacher v. Laird, 92 Ohio St. 324, 110 N.E. 933 (1915), paragraph one of the syllabus (“There can be no implied covenants in a contract in relation to any matter that is covered by the written terms of the contract itself’). When a contract specifies an agreed point at which royalties are valued, implied duties should not be applied to alter that agreement.
*530 Kirkland <& Ellis, L.L.P., and Daniel T. Donovan; Vorys, Sater, Seymour & Pease, L.L.P., and John K. Keller; and Reed Smith, L.L.P., Kevin C. Abbott, and Nicolle R. Snyder Bagnell, for petitioner.
Lowe, Eklund, & Wakefield Co., L.P.A., and James A. Lowe; Law Office of Robert C. Sanders and Robert Sanders, for respondents.
Lija Kaleps-Clark, in support of petitioner for amici curiae Ohio Oil and Gas Association, Artex Oil Company, Eclipse Resources I, L.P., Enervest Operating, L.L.C., NGO Development Corporation, Inc., Rex Energy Corporation, and Sierra Resources, L.L.C.
Porter, Wright, Morris & Arthur, L.L.P., L. Bradford Hughes, and Christopher J. Baronzzi; and Matthew A. Haynie, in support of petitioner for amicus curiae American Petroleum Institute.
McGinnis, Lochridge & Kilgore and Bruce M. Kramer, in support of petitioner for amicus curiae Bruce M. Kramer.
Krugliak, Wilkins, Griffiths & Dougherty Co., L.P.A., William J. Williams, Scott M. Zunakowski, Gregory W. Watts, and Aletha M. Carver, in support of neither side for amici curiae Sam Johnson, Zehentbauer Family Land, L.P., Hanover Farms, L.P., and Bounty Minerals, L.L.C.
{¶ 21} Naturally, as the multiple lease provisions presented in this case demonstrate, the language of leases may differ, and the law applicable to one form of lease may not be applicable to another form of lease. Harris at 129. That fact notwithstanding, I would answer the question posed by the federal court. Pursuant to existing Ohio law, the parties’ rights and remedies must be determined by the terms of the lease. Chesapeake Exploration, L.L.C., 144 Ohio St.3d 490, 2015-Ohio-4551, 45 N.E.3d 185, ¶ 53. When a lease provides that the lessor’s royalty is based on value at the well, Ohio follows the at-the-well rule. I would further hold that “at the well,” under Ohio law, is defined as the gross proceeds of a sale minus postproduction costs.
{¶ 22} I respectfully dissent.