[Cite as *Hudson v. Jones*, 2023-Ohio-1447.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| TODD HUDSON | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Willilam B. Hoffman, J. |
| Plaintiff-Appellant | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2022 CA 0066 |
| CHRISTOPHER JONES | : |  |
|  | : |  |
| Defendant-Appellee | : | OPINION |

CHARACTER OF PROCEEDING:      Civil appeal from the Mansfield Municipal
Court, Case No. 2022 CVI 0054

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      May 2, 2023

APPEARANCES:

For Plaintiff-Appellant                      For Defendant-Appellee

DARIN AVERY                               CHRISTOPHER JONES PRO SE
105 Sturges Avenue                    354 S. Main Street
Mansfield, OH 44903                   Mansfield, OH 44902

*Gwin, P.J.*

**{¶1}** Appellant appeals the August 25, 2022 judgment entry of the Mansfield Municipal Court adopting the magistrate's decision and entering judgment in favor of appellee.

*Facts & Procedural History*

**{¶2}** Appellant Todd Hudson is a licensed plumber. Appellee Christopher Jones is the owner of 300 Harker Street in Mansfield, Ohio. On August 14, 2021, the parties entered into a written contract for appellant to perform plumbing work at 300 Harker. Appellant filed a police report on September 1, 2021 alleging that some of his tools he left on the job site at 300 Harker had been stolen.

**{¶3}** On January 11, 2022, appellant filed a pro se breach of contract complaint against appellee. The complaint alleged, in part, as follows: the parties entered into a contract on August 21, 2021; appellant agreed to install plumbing for one bathroom and a kitchen sink for a total of $1,500, plus materials; appellant received a deposit of $500; the remainder was to be due upon the completion of the work; the balance of the contract was $3,074.69; equipment owned by appellant was removed from the job site for a total of $1,784.76; and the parties agreed appellee would pay appellant by December 1, 2021. Appellant sought money damages from appellee in the amount of $2,434.45, plus interest. The parties agree that appellee paid appellant $2,500 pursuant to the contract.

**{¶4}** The magistrate conducted a bench trial on June 7, 2022.

**{¶5}** Frank Waddle ("Waddle") is a plumbing inspector for Richland County. When it was determined that appellee was not going to reside in the home, the department sent him a letter stating the work had to be performed by a licensed plumber. Upon

examination by the court, Waddle testified he went to do the initial final inspection at 300 Harker Street. There were pipes replaced in the basement where cast iron had been taken out and plastic was put in its place. The plastic was leaking and was not up to code. Appellant reported to Waddle that he (appellant) did not have anything to do with that.

{¶6} Waddle stated he had no firsthand knowledge of Exhibit A (letter to appellee) or what is contained in that exhibit. Waddle testified Exhibit B is the original permit appellee pulled to do the plumbing work for the kitchen and bathroom, and Exhibit D is the permit that Mr. Rooter pulled to repair the plumbing system where the piping was leaking when Waddle did his final inspection.

{¶7} Trent Dawson ("Dawson") is the owner of Mr. Rooter Plumbing. Appellee contacted him to get the plumbing completed at 300 Harker because there were leaks and a non-code-approved fitting in the basement. Dawson stated appellee never spoke with him about appellant. Dawson did not do anything upstairs in the bathroom; he was just hired to fix the leaks. Appellee paid Dawson a total of $2,970.

{¶8} At the start of his testimony, appellant submitted multiple documents as exhibits. Appellant testified that appellee contacted him to do plumbing. Appellee had initially pulled the permit to do the plumbing himself, but it did not pass inspection. Appellant drew up a contract (Exhibit F) and he started doing the work. Appellant wrote the second agreement (Exhibit G) because appellee did not pay appellant the full amount when appellee gave him the invoice, and appellant felt appellee was not trustworthy. Appellee gave appellant $500 initially, and then appellee gave appellant $2,000 cash on December 6.

**{¶9}** Appellant testified that, when he was working on the job, he never left tools at the Harker home. However, the last day of the job, appellant left some of his tools there. The next day when he returned, his tools were missing. None of appellee's equipment was taken. Appellant filed a police report detailing the equipment he lost.

**{¶10}** Appellant cross-examined appellee. Appellee stated he did pull a plumbing permit himself, but there were things on the permit he did not understand, so he determined he needed to hire a plumber. Appellee testified that appellant told him if he assigned the pending permit to appellant, the plumbing inspectors would be more lenient on the inspection, so appellee signed the permit over to appellant. Appellee stated he signed Exhibit F, which was a contract between the parties. Appellee stated he gave appellant $500 up front, even though the contract says $700 up front, because appellant verbally told appellee that $500 was sufficient pre-payment. Appellee gave appellant a total of $2,500.

**{¶11}** Appellee stated when appellant presented him an invoice with a $574.69 balance remaining, appellee asked appellant if everything was tight, sealed, and working. When appellant presented appellee with a second invoice with the $574.69 plus $1,172.76 due, appellee became suspicious. Appellee "has a problem" with appellant charging him for the parts listed at $1,172.76. Appellee requested appellant provide him with an itemized list because appellee had "no idea" where the numbers came from. Further, appellee does not believe he owes appellant the additional $1,172.76 because appellee was not responsible for losing appellant's tools.

**{¶12}** Appellee testified that appellant did not complete the work listed in the contract because appellant refused to fix a pipe he was supposed to fix under the

bathroom, and a drain was leaking.  Appellee stated he does not owe appellant any more money because he paid him the amount contained in the contract.  Appellee testified that, per the language of the contract, he believed appellant was going to completely fix everything that needed to be done, specifically the drains, but that was not what happened because, after two months of a "fiasco" with appellant, appellee still had to call somebody else to come in and fix the property.  Appellee's interpretation of the contract was that plumbing included "flush[ing] the toilet and [having] it go into the sewer and not drain or leak nowhere else."  Further, appellee believes appellant did not abide by the contract because he never asked appellee to choose products or materials.

{¶13}  Appellee then testified on direct examination.  First, appellee does not believe the contract is valid because appellant's company is not legally recognized by the State of Ohio.  Second, if the contract is valid, appellee's understanding of the contract is that he hired appellant to fix the drains in the house, which would include "sewage stuff."  When the amount was higher than listed in the contract, appellee asked appellant for an itemized list of parts, which he never received.  Appellee did not pay appellant because he felt he was trying to get money by leaving his tools on the property.  Appellee does not believe it is his fault appellant left his tools there and they got stolen.  Appellee paid appellant a total of $2,500, and then paid Mr. Rooter $2,900 to fix the leaks and drain.

{¶14}  When the court stated it would take the matter under advisement, appellant asked if he "could rebuttal with anything."  The court stated appellant could not testify, but stated it would discuss the exhibits with the parties.

{¶15}  Exhibit F is the contract between the parties ("Contract"), dated August 12, 2021, a document drafted by appellant.  It provides, in part, appellant would do "plumbing

work in accordance with [the] Ohio plumbing code to install the drain, waste, and vent for one-bathroom group consisting of one water closet, one bathtub, one lavatory, also to include one kitchen sink." It provided the total cost of the labor was not to exceed $1,500 and "total cost of material to be determined upon customer's choice of products." Exhibit G is a document prepared by appellant entitled "Agreement of payment" ("Agreement") that states, "[appellant] has performed all required commitments and contracted plumbing work on 300 Harker Ave. * * * [appellee] has agreed to pay $574.69 plus any final expenses." Further, "during the time this project [appellee] was to keep project secure and he failed to do this by poor installation of a backdoor. Because of this [appellant] had tools and equipment stolen from the project totaling $1,784.76 * * * a tentative agreement has been reached were as [sic] [appellee] will pay $574.69 plus the additional material cost on December 1," or appellant will "seek reimbursement" for all items stolen. Exhibits H and I are invoices appellant generated.

{¶16} The magistrate issued a decision on June 16, 2022. The magistrate noted that appellant filed suit to recover damages for labor, materials, and damages for his tools allegedly stolen or missing from the job site at 300 Harker. The magistrate found as follows: there was a contract between the parties; appellant performed some plumbing work pursuant to the contract in order to have been paid $2,500 by appellee; appellant submitted an agreement of payment and invoices that appellant compiled, but this is the only evidence submitted to suggest appellant performed work for appellee; appellant never testified to the contents of the exhibits or supported the contents of the exhibits with additional evidence; appellant did not testify as to what work he actually performed; appellant invoiced appellee for materials, but never submitted into evidence what these

materials were used for and how much each material cost; appellant did not present any evidence as to how he arrived at the $2,434.45 in damages he requested; and appellant never presented the court with a calculation of the hourly rate, how many hours were worked, what materials were used, or the cost of the materials.  With regards to the $1,784.76 in damages for tools that went missing from 300 Harker, the magistrate stated, "if in fact these tools were stolen from 300 Harker as alleged by Plaintiff, this would be a criminal offense.  As such, said alleged theft would need to be investigated and prosecuted as such, not litigated in small claims court."  The magistrate concluded that, while appellant did prove the existence of a contract, appellant failed to prove, by a preponderance of the evidence, performance, breach, or damages.  The magistrate entered judgment in favor of appellee.

{¶17}  Appellant filed objections to the magistrate's decision on June 30, 2022, arguing:  the magistrate erred in finding appellant failed to establish performance; the magistrate erred in finding appellant failed to establish breach; and the magistrate erred in finding appellant failed to establish damages.  Appellant filed the following supplemental objections on August 8, 2022:  the magistrate erred in not allowing appellant to present rebuttal evidence; the magistrate erred in not finding evidence of damages in Exhibit G; the magistrate erred in not finding that Exhibit G had sufficient terms and consideration to constitute an independent contract; the magistrate erred in finding no evidence of performance of the original contract; and the magistrate erred in finding the tool theft was the subject of criminal proceedings due to Exhibit G.

{¶18}  The trial court issued a judgment entry on August 25, 2022, adopting the magistrate's decision.  The trial court first noted that Exhibits F and G, which appellant

used as support for his objections, are documents that appellant drafted. The court found appellant did not provide any evidence as to work he actually performed; thus, the court was unable to determine from the evidence what work appellant performed for the $2,500 amount. Further, even if Exhibit G was an independent contract, appellant did not show damages from an alleged breach, as appellant never provided any testimony or evidence to support his request for $574.69 for labor and parts. The trial court cited the clause in Exhibit F that the, "total cost of material [was] to be determined upon customer's choice of products." The court also found appellant never testified or provided any evidence as to what the $75.00 for "final expenses" was. The court determined the evidence presented by both appellant and appellee confirmed the tools were stolen; thus, it is not a civil issue. The trial court adopted the magistrate's decision and entered judgment in favor of appellee.

{¶19} Appellant appeals the August 25, 2022 judgment entry of the Mansfield Municipal Court and assigns the following as error:

{¶20} "I. THE TRIAL COURT ERRED IN FINDING THAT HUDSON DID NOT DEMONSTRATE THE DAMAGES HE REQUESTED.

{¶21} II. THE TRIAL COURT ERRED IN FINDING THAT HUDSON DID NOT DEMONSTRATE THAT HE HAD COMPLETED WORK AND PAID FOR PARTS.

{¶22} III. THE TRIAL COURT ERRED IN DECLINING TO AWARD DAMAGES TO HUDSON.

{¶23} IV. THE TRIAL COURT ERRED IN DECLINING TO AWARD COURT COSTS AND ATTORNEY FEES TO HUDSON.

{¶24} V. THE TRIAL COURT ERRED IN NOT ALLOWING HUDSON TO PRESENT REBUTTAL EVIDENCE."

I., II., III.

{¶25} In his first three assignments of error, appellant essentially argues the trial court's decision regarding performance, breach, and damages was against the manifest weight of the evidence.

{¶26} The magistrate conducted a bench trial in this case. In a manifest weight of the evidence review in a civil case, a reviewing court is to examine the entire record and determine "whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517. "In a civil case, in which the burden of persuasion is only by a preponderance of the evidence, rather than beyond a reasonable doubt, evidence must still exist on each element (sufficiency) and the evidence on each element must satisfy the burden of persuasion (weight)." *Id.*

{¶27} As an appellate court we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent, and credible evidence upon which the fact-finder could base its judgment. *Cross Truck Equip. Co. v. Joseph A. Jeffries Co.*, 5th Dist. Stark No. CA5758, 1982 WL 2911 (Feb. 10, 1982). Accordingly, judgments supported by some competent and credible evidence going to all essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). The underlying rationale for giving deference to the findings of the trial court rests

with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proferred testimony. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984). Accordingly, a trial court may believe all, part, or none of the testimony of any witness who appears before it. *Rogers v. Hill*, 124 Ohio App.3d 468, 706 N.E.2d 438 (4th Dist. 1998).

{¶28} The sole count included in appellant's complaint against appellee is a breach of contract claim. The elements for a breach of contract are that a plaintiff must demonstrate by a preponderance of the evidence: (1) a contract existed, (2) the plaintiff fulfilled his obligations, (3) the defendant failed to fulfill his obligations, and (4) damages resulted from this failure. *Moore v. Adams*, 5th Dist. Tuscarawas No. 2007AP090066, 2008-Ohio-5953. The magistrate and trial court found appellant did prove the first element (that a contract existed), but failed to prove, by a preponderance of the evidence, the remaining three elements of a breach of contract claim.

{¶29} Appellant makes several arguments as to why the trial court's determinations are against the manifest weight of the evidence.

{¶30} First, appellant contends the Agreement purportedly signed by the parties on October 29, 2021, is a separate, definitive, and final contract that requires appellee to pay $574.69 for labor and parts and $1,784.76 for tools stolen because he did not pay the $574.69 by December 1. However, the "Agreement" document that appellant prepared pro se specifically states, "a tentative agreement has been reached were [sic] as Mr. Jones will pay $574.69 plus the additional material cost on December 1." The meaning of the word "tentative" is "not fully worked out or developed" or uncertain." Merriam-Webster.

https://www.merriam-webster.com/dictionary/tentative (accessed April 1, 2023). The meaning of the word "tentative" is the "very antonym" of final or definitive. *Woodward v. Claser*, 2nd Dist. Montgomery No. 57 Ohio Law Abs. 180, 93 N.E.2d 785 (1950). Accordingly, we find the trial court did not commit error in finding the Agreement was not a separate and independent contract upon which appellant could base his claim for breach of contract.

{¶31} Further, appellant argues that, even if the Agreement was not a separate, independent contract, the Agreement is undisputed evidence that appellant completed the job per the contract and undisputed evidence that appellee agreed to the amounts of $574.69, $75.00, and $1,784.76 in damages because appellee purportedly signed the document. The magistrate and trial court found Exhibit G was insufficient to establish performance, breach, and damages.

{¶32} We find this conclusion is not against the manifest weight of the evidence because appellee disputed the information contained in Exhibit G during his testimony. Appellee testified upon direct examination that appellant did not fully perform the contract because the contract states appellant would complete the plumbing work for the "drain, waste, and vent for one-bathroom group," and, after appellant completed his work, a pipe under the bathroom was not fixed and a drain was leaking. Appellee also testified appellant did not provide him with a list of the cost of materials, despite multiple requests. Appellee stated appellant did not abide by the contract because appellant did not allow him to choose the materials. Appellant also testified he never agreed to pay for appellee's tools, and it was not his responsibility to secure appellant's tools. Upon cross-examination,

appellee agreed he signed Exhibit F, the original contract.  Appellant never asked appellee about the Agreement (Exhibit G) during cross-examination.

{¶33}  The trier of fact is entitled to weigh the evidence, assess the credibility of the witnesses and exhibits, and make a determination upon this disputed evidence. Further, as to the tools, appellant only makes a breach of contract claim with regards to the tools, not a tort claim.  There is no provision for the securing of the property or payment for tools in the Contract (Exhibit F).

{¶34}  Appellant contends that, even if performance, breach, and damages are not stipulated to in the Agreement, the testimony and exhibits submitted by appellant demonstrate performance, breach, and damages.  Appellant cites to the testimony of Waddle concerning the permit and final inspection, and the invoices submitted by appellant to appellee.  While appellant is correct that Waddle testified the permit assigned to appellant passed final inspection and that Mr. Rooter's repair required a separate permit, when asked whether the leaks were "outside of what [appellant] was contracted to do," Waddle responded, "that I can't testify to."  The permit and Contract are separate documents, and Waddle could not testify to what was contained in the Contract.  When appellant asked Dawson if "his work" (appellant's work) was in the scope of the work Dawson fixed, Dawson stated he didn't know what appellant was supposed to do, and Dawson just fixed the leaks.  Appellant did not testify as to what work he actually did in the house, or explain what comprised the larger numbers contained in the invoices.

{¶35} We find the magistrate and trial court's conclusions are not against the manifest weight of the evidence.  While the magistrate and the trial court may not have accorded appellant's exhibits the credibility or weight appellant thought they deserved, the

court acted within its discretion to evaluate all of the evidence presented and determine its significance.

{¶36} In this case, appellant contends he completed all of the plumbing work as required by the contract. Appellee contends the plumbing underneath the bathroom and the drain from the bathroom to the sewer was included in the contract, was not completed by appellant per the contract, and had to be finished by Dawson at appellee's additional expense. The testimony of appellant and appellee is conflicting, and the trier of fact resolved this conflict. There is some competent and credible evidence, in the form of appellee's testimony, upon which the trier of fact could base its decision. Appellant's first, second, and third assignments of error are overruled.

IV.

{¶37} In his fourth assignment of error, appellant contends the trial court committed error in declining to award court costs and attorney fees to appellant because the parties agreed in the Agreement that appellee would pay "legal expenses." In the Agreement, the parties stated there was a "tentative agreement" that if appellee did not pay $574.69 on December 1, appellee agreed to pay for legal expenses. As detailed above, this "tentative agreement" does not constitute a contract. The Contract (Exhibit F) does not include any terms concerning court costs or legal expenses.

{¶38} R.C. 1925.15 governs costs in small claims proceedings and states, "the actual disbursements of the prevailing party for filing fees, execution fees, and other court fees may be allowed as costs. No other costs shall be allowed either party except by special order of the court. Costs allowed under this section may be apportioned between the parties, or waived, in whole or in part, as the court determines to be equitable."

Because appellant was not the prevailing party, the trial court did not abuse its discretion in not awarding appellant court costs pursuant to R.C. 1925.15.

**{¶39}** Appellant's fourth assignment of error is overruled.

V.

**{¶40}** In appellant's fifth assignment of error, appellant argues the trial court committed error in not permitting appellant to present rebuttal evidence. At the conclusion of appellee's direct testimony, appellant asked the court if "he could rebuttal with anything." The trial court stated, "you can't testify, no," stating that appellant previously testified and had cross-examined appellee; however, the trial court permitted appellant to move to admit his exhibits. It is within the trial court's discretion to determine what evidence is admissible as proper rebuttal. *State v. Rengert*, 5th Dist. Delaware No. 19 CAA 10 0056, 2021-Ohio-2561.

**{¶41}** We find the trial court did not abuse its discretion in denying appellant's request to provide his own statement in rebuttal. The record demonstrates appellant was fully able to argue his case. At the beginning of appellant's testimony, the court went through each of appellant's exhibits, and then asked appellant to "tell his side of the story." Appellant gave detailed testimony. Appellant then asked if he could ask appellee questions. The magistrate permitted appellant to extensively cross-examine appellee. Appellant asked appellee numerous questions, and asked some of the same questions repeatedly. Additionally, several times throughout the trial while questioning other witnesses, appellant did not ask questions of the witnesses, but testified, or attempted to testify, with his own statements. Appellant was able to thoroughly develop the breach of contract issue before the magistrate, who was the trier of fact in this case.

{¶42}  Appellant's fifth assignment of error is overruled.

{¶43}  Based on the foregoing, appellant's assignments of error are overruled.

{¶44} The August 25, 2022 judgment entry of the Mansfield Municipal Court is affirmed.

By Gwin, P.J., and

Delaney, J., concur;

Hoffman, J., concurs

separately

*Hoffman, J., concurring*

{¶45} I concur in the majority's analysis and disposition of Appellant's assignments of error I, II, III, and IV.

{¶46} I further concur in the majority's disposition of Appellant's assignment of error V. I find the magistrate erred in not allowing Appellant to present rebuttal testimony. However, Appellant fails to identify in his brief or affirm a proffer was made of what his rebuttal testimony would have been. Accordingly, I find no prejudice resulted.